**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HENRY LEE DENNIS,

      Petitioner-Appellant,

v.

DAYTON POPPEL; JAMES L. SAFFLE,

      Respondents-Appellees.

No. 99-6294

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 98-CV-335-A)**

Mac Oyler, Oklahoma City, Oklahoma, for Petitioner-Appellant.

Lori S. Carter (W.A. Drew Edmondson, Attorney General, with her on the brief), Assistant Attorney General, Oklahoma City, Oklahoma, for Respondents-Appellees.

Before **BRORBY, McKAY** and **BRISCOE**, Circuit Judges.

**BRORBY**, Circuit Judge.

      Appellant Henry Lee Dennis, an Oklahoma state prisoner, appeals an order

of the district court denying his petition for a writ of habeas corpus filed pursuant

to 28 U.S.C. § 2254. Mr. Dennis' appeal centers on his contention the State of Oklahoma impermissibly tried and convicted him of four offenses stemming from a single transaction involving the same rock of cocaine, in violation of the Double Jeopardy Clause and an Oklahoma statute prohibiting multiple punishments for a single act. We exercise jurisdiction pursuant to 28 U.S.C. § 2253 and affirm.

## I. FACTUAL BACKGROUND

The facts surrounding Mr. Dennis' sale and possession of a controlled dangerous substance are undisputed. County and city enforcement officials involved in an undercover narcotic investigation used an informant, Charles Shaw, to arrange a drug deal with Mr. Dennis. Under the officers' supervision, Mr. Shaw contacted Mr. Dennis in Vernon, Texas, and arranged to meet him at a designated place in Frederick, Oklahoma, to purchase "a half" or one-half ounce of rock cocaine. At the designated meeting spot, Mr. Shaw gave Mr. Dennis $450 in exchange for a large, ten-gram rock of "cocaine base" scored into four sections. After selling the rock cocaine to Mr. Shaw, Mr. Dennis drove away. Officers immediately followed Mr. Dennis' vehicle and pulled him over. In Mr. Dennis' vehicle, officers discovered two rocks consisting of 20.7 grams of "cocaine base" wrapped in a cellophane package. Each piece was scored into four sections. Mr. Dennis' vehicle also contained a knife with a blackened edge,

which an officer testified Mr. Dennis probably heated to score the rock cocaine into multiple pieces for sale. Neither the rock cocaine sold to Mr. Shaw nor that found in Mr. Dennis' vehicle had tax stamps affixed.

A jury convicted Mr. Dennis of two counts of trafficking in illegal drugs, under Okla. Stat. tit. 63, § 2-415, and set his punishment at life in prison and a $100,000 fine for each count. The jury also convicted him of two counts of possession of cocaine base without proper tax stamps affixed, under the Oklahoma Controlled Dangerous Substance Tax Act, Okla. Stat. tit. 68, §§ 450.1 - 450.9, setting his punishment at ten years in prison for each count. Based on the jury's recommendation, the trial court sentenced Mr. Dennis to two terms of life in prison together with two $100,000 fines, and two ten-year sentences – all to run consecutively.

## II. PROCEDURAL BACKGROUND

The Oklahoma Court of Criminal Appeals affirmed Mr. Dennis' conviction on direct appeal. Thereafter, Mr. Dennis unsuccessfully sought state habeas post-conviction relief at the district and appellate court levels. Following his unsuccessful state litigation, Mr. Dennis filed his federal habeas corpus petition raising eight grounds for habeas relief. Mr. Dennis based six of his claims on

double jeopardy or related grounds.  The thrust of these claims centered on his

suggestion he can only receive one conviction, not four convictions, for his

activities involving the same rock of cocaine.[1]

---

[1]  Specifically, Mr. Dennis claimed:

1) a double jeopardy violation for receiving two convictions for the same drug trafficking offense;

2) a double jeopardy violation for receiving two convictions for failing to purchase and affix tax stamps, even though Okla. Stat. tit. 68, § 450.3 requires only one tax stamp on the entire quantity of rock cocaine;

3) a double jeopardy violation for receiving convictions for the "lesser included offense" of drug trafficking when he already was convicted for the offense of possession of rock cocaine without proper tax stamps;

4) a violation of Okla Stat. tit. 21, § 11, which prohibits punishment of one illegal act under more than one statutory penalty provision;

5) a denial of his due process and equal protection rights based on the state court's failure to apply § 11; and

6) invalid convictions based on multiple punishments for offenses that should have been merged;

and in addition to his double jeopardy claims, Mr. Dennis also claimed:

7) a due process and equal protection violation based on the vagueness of Okla. Stat. tit. 63, § 2-415, which calls for enhanced penalties for certain quantities of "cocaine base" as opposed to greater quantities of "cocaine"; and

8) ineffective assistance of trial and appellate counsel for failing to raise the seven other underlying claims either at trial or on direct appeal.

The district court referred Mr. Dennis' petition to a magistrate judge who recommended denial of Mr. Dennis' petition. In making this recommendation, the magistrate judge began by reviewing the procedural disposition of each of Mr. Dennis' claims. First, the magistrate judge determined Mr. Dennis raised only two of the eight claims in his direct state appeal.[2] As to the remaining six issues, the magistrate judge determined Mr. Dennis raised them for the first time in his state application for post-conviction relief. The magistrate judge noted the Oklahoma Court of Criminal Appeals denied Mr. Dennis post-conviction relief in a summary decision, rejecting two of his claims under the principles of *res judicata* and five of his claims for procedural default. However, the Oklahoma court did consider and reject Mr. Dennis' ineffective assistance claim on the merits, holding he failed to present a claim constituting a "dead bang winner."

After determining Mr. Dennis must show cause for his state procedural default and actual prejudice therefrom, the magistrate judge proceeded to the merits of Mr. Dennis' claims based on his ineffective assistance of counsel claim,

---

[2] The two issues Mr. Dennis previously raised included claims of: 1) a double jeopardy violation because he was convicted for possession of rock cocaine without affixed tax stamps when he already was convicted for trafficking the same cocaine, and 2) a violation of his due process and equal protection rights due to the vagueness of § 2-415.

recognizing the ineffective assistance claim may constitute cause for procedural default in state court.  Following a determination Mr. Dennis' underlying claims lacked merit, the magistrate judge held no prejudice resulted from Mr. Dennis' counsel's failure to raise them either at trial or on direct appeal.  After reviewing Mr. Dennis' objections to the magistrate judge's determinations, the district court adopted the magistrate judge's Report and Recommendation, denied Mr. Dennis' petition for a writ of habeas corpus, and denied his request for a certificate of appealability.

## III.  DISCUSSION

On appeal, Mr. Dennis raises the same eight issues addressed by the district court and requests a certificate of appealability for the purpose of reviewing the merits of his appeal.  In order for this court to grant a certificate of appealability and proceed to the merits of Mr. Dennis' appeal, he must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Where, as here, the "district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, ___ U.S. ___, ___, 120 S. Ct. 1595, 1604 (2000).  This court determined Mr. Dennis made the

necessary showing, granted him a certificate of appealability to proceed on appeal, and ordered briefing on his claims. (We review Mr. Dennis' ineffective assistance of counsel claim and other constitutional or underlying claims, applying the following standard of review.

## A. Standard of Review

Because Mr. Dennis seeks relief from a state conviction, he must show the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The district court determined Mr. Dennis' petition failed to meet this requirement. We review the legal basis for the district court's dismissal of Mr. Dennis' § 2254 petition *de novo*. *See Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. ), *cert. denied*, 525 U.S. 950 (1998). We note the district court's denial of Mr. Dennis' petition stemmed, in part, from his procedural default in failing to raise six of his claims on direct appeal. Oklahoma law denying post-conviction relief on defaulted claims that could have been raised on direct appeal provides an independent and adequate state ground permitting us to refuse to review such claims. *See Odum v. Boone*, 62 F.3d 327, 331 (10th Cir. 1995). This court will not perform a habeas review on issues defaulted in state court on independent and adequate state

procedural grounds, unless Mr. Dennis can demonstrate "cause and prejudice or a fundamental miscarriage of justice." *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998) (relying on *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991)). As the magistrate judge in this case ascertained, an ineffective assistance of counsel claim can serve as "cause" to excuse Mr. Dennis' procedural default on his other underlying or constitutional claims. *See Coleman*, 501 U.S. at 753-54.

We determine whether Mr. Dennis has shown "cause" for his state procedural default on his other claims by assessing his ineffective assistance of counsel claim. *Hickman*, 160 F.3d at 1273. Mr. Dennis' ineffective assistance of counsel claim "presents a mixed question of law and fact which we review de novo." *Id.* at 1273 (quotation marks omitted). To prevail on this claim, Mr. Dennis must show: "(1) that his counsel's performance fell below an objective standard of reasonableness and (2) that the deficient performance was prejudicial to his defense." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)). Under *Strickland*, we need not separately determine the effectiveness of Mr. Dennis' counsel if we find the alleged deficiency did not prejudice Mr. Dennis. *See Brewer v. Reynolds*, 51 F.3d 1519, 1523 & n.7 (10th Cir. 1995), *cert. denied*, 516 U.S. 1123 (1996). In order to determine if prejudice occurred, we review the merits of Mr. Dennis' underlying or constitutional claims. *See Banks*

*v. Reynolds*, 54 F.3d 1508, 1514, 1516 (10th Cir. 1995). If those claims lack merit, Mr. Dennis cannot claim prejudice from his attorney's failure to raise them at trial or on direct state appeal. *Id.* With these standards in mind, we proceed to examine the merits of each of Mr. Dennis' grounds for appeal.

### B. Double Jeopardy and Related Claims

The crux of Mr. Dennis' double jeopardy and related claims rests on the fact Mr. Dennis received four convictions for what he describes as a single act or transaction, occurring at the same time and place, and involving the same rock of cocaine, which he scored, broke apart and delivered a part of to Mr. Shaw. Mr. Dennis suggests he should be convicted of only one offense and not receive four convictions in violation of the Double Jeopardy Clause and Okla. Stat. tit. 21, § 11 prohibiting multiple punishments. The arguments Mr. Dennis uses to support these claims are addressed below.

### 1. Two Drug Trafficking Convictions

Mr. Dennis' most ardent argument surrounds his claim the two drug trafficking convictions violate the Double Jeopardy Clause because the state impermissibly charged him with two "means" or "methods" of committing the same offense of "trafficking." In support of this argument, Mr. Dennis directs us

to Okla. Stat. tit. 63, § 2-415, which states drug trafficking is committed when individuals "[k]nowingly distribute, manufacture, bring into [the State of Oklahoma] or possess a controlled substance." Okla Stat. tit. 63, § 2-415. Mr. Dennis asserts this language presents four means or methods of "trafficking," *i.e.*, 1) distributing, 2) manufacturing, 3) bringing into the state, or 4) possessing a controlled substance. Because the state charged and convicted him of "two means" of committing drug trafficking – possession and distribution – Mr. Dennis argues the state impermissibly convicted him of "two means" of committing the same offense in violation of the Fifth Amendment Double Jeopardy Clause. Ultimately, the question Mr. Dennis presents is whether § 2-415 deals with one offense or multiple offenses.

The Double Jeopardy Clause provides constitutional protections against multiple punishments for the same offense. *See Cummings v. Evans*, 161 F.3d 610, 614 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 1360 (1999). The question of whether Mr. Dennis' punishments are multiple in violation of the Double Jeopardy Clause is "'essentially one of legislative intent.'" *Id.* (quoting *Ohio v. Johnson*, 467 U.S. 493, 499 (1984)). As the magistrate judge in this case aptly surmised, "[w]hether the Oklahoma legislature intended for multiple punishments to be imposed pursuant to Okla. Stat. tit. 63, § 2-415(B)(1) is an issue not

-10-

previously addressed by the Oklahoma courts."

Because the legislative intent is not clear on whether § 2-415 deals with one or multiple offenses, we apply the "same evidence" test established in *Blockburger v. United States*, 284 U.S. 299 (1932), which the Oklahoma courts, when addressing similar double jeopardy determinations, have used for guidance. For instance, in *Ferguson v. State*, 644 P.2d 121 (Okla. Crim. App. 1982), a situation arose in which the defendant was convicted under Okla. Stat. tit. 63, § 2-401 in two separate proceedings, for possession of marijuana with intent to distribute, and for unlawful delivery of marijuana. *Id.* at 122. The Oklahoma court, in determining whether § 2-401 dealt with one or multiple offenses, relied on the *Blockburger* "same evidence" test. *Id.* The "same evidence" test requires us to determine whether Mr. Dennis' convictions arising under the same statutory provision are based on offenses containing different or the same factual elements of proof. *Id.*; *see also Davis v. State,* 993 P.2d 124, 125 n.1 (Okla. Crim. App 1999) (relying on *Mooney v. State*, 990 P.2d 875, 883 (Okla. Crim. App. 1999)).

This circuit has applied the same criteria when faced with double jeopardy

issues.[3] Specifically, we and other circuits have performed the same or a similar analysis on a similar federal statute, 21 U.S.C. § 841(a), which makes it unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." In construing § 841(a), we determined "various stashes of [a] drug are considered separate where the evidence indicates they were intended for different purposes or transactions." *United States v. Johnson*, 977 F.2d 1360, 1374 (10th Cir. 1992), *cert. denied*, 506 U.S. 1070 (1993). *See also United States v. Randall*, 171 F.3d 195, 209-10 (4th Cir. 1999) (holding the acts of "possession with intent to distribute" and "distribution" require different elements so no double jeopardy violation arises from conviction for two separate offenses contained in two separate clauses of the same statute) (relying on *United States v. Gore*, 154 F.3d 34, 45-57 (2d Cir. 1998); *United States v. Sepulveda*, 102 F.3d 1313, 1316 (1st Cir. 1996); *United States v. Tejada*, 886 F.2d 483, 490 (1st Cir. 1989); *United States v. Zabaneh*, 837 F.2d 1249, 1257 (5th Cir. 1988); *United States v. Brunty*, 701 F.2d 1375, 1381 & n.16 (11th Cir.), *cert. denied*, 464 U.S. 848 (1983); *United States v. Winston*, 687 F.2d 832, 834 n.1 (6th Cir. 1982); *United States v. Nelson*, 563 F.2d 928, 931 (8th

---

[3] *See also Cummings*, 161 F.3d at 614. In *Cummings*, unlike here, the double jeopardy issue concerned convictions under two statutory provisions, not one. Nevertheless, like here, we applied the *Blockburger* "same evidence" test to determine if each offense requires a proof of fact the other does not.

Cir. 1977)).

In applying the "same evidence" test in this case, we must compare the acts of "distribution" and "possession" contained in the same provision of § 2-415 to determine if the legislature intended them to be different offenses. In other words, we must determine if a difference exists in the proof of facts required to prove Mr. Dennis' "distribution" of the rock cocaine to Mr. Shaw compared to those facts required to prove his "possession" of the rock cocaine found in his car. *See Branch v. Mills*, 500 P.2d 590, 593 (Okla. Crim. App. 1972).

While the differences between "distribution" and "possession" seem readily apparent, we nevertheless turn to Oklahoma law to address the issue. Both Oklahoma statutory and case law set out the elements for proving "distribution" and "possession" as contemplated by the legislature. While Okla. Stat. tit., 63, § 2-415 does not define "distribute," the definitions listed in Okla. Stat. tit. 63, § 2-401 apply to the Uniform Controlled Dangerous Substances Act, including § 2-415. Under § 2-401(12), "the word 'distribute' means to *deliver* ... in any manner other than to 'administer' or 'dispense,' which would encompass the *act of selling* a controlled dangerous substance." *Starks v. State*, 523 P.2d 1108, 1110 (Okla. Crim. App. 1974) (emphasis added). On the other hand, "the elements of

-13-

possession are (1) knowing and intentional; (2) possession; ... (3) [of] a controlled dangerous substance." *White v. State*, 900 P.2d 982, 986 & nn. 5 & 6 (Okla. Crim. App. 1995) (relying, in part, on Okla. Stat. tit. 63, § 2-415)). The Oklahoma Court of Criminal Appeals also has determined that "[p]ossession itself means that the possessor has 'dominion and control' over the possessed drug, that is, a right to control its disposition." *Miller v. State*, 579 P.2d 200, 202 (Okla. Crim. App. 1978).

A comparison of these elements leads us to conclude "distribution" and "possession" clearly require distinct and separate elements. S*ee Davis*, 993 P.2d at 125; *Mooney*, 900 P.2d at 883. This persuades us the Oklahoma legislature intended different offenses and punishments for "distribution" and "possession," even though both are contained within the same provision of § 2-415. Applying the specific elements of each offense to the case at hand, we acknowledge that at one point, Mr. Dennis obviously possessed all three pieces of the rock cocaine. However, at the time he separated, sold and delivered the ten-gram portion to Mr. Shaw, he no longer possessed or retained control over that quantity of rock cocaine, and instead committed the act of distribution in violation of the prohibition in § 2-415. When Mr. Dennis retained the other two pieces of rock cocaine in his vehicle and drove away, he knowingly and intentionally possessed a

-14-

separate and distinct quantity of cocaine in violation of another separate prohibition in § 2-415.[4]  Therefore, the trafficking crimes for which Mr. Dennis was convicted do not constitute, as Mr. Dennis claims, simultaneous methods for committing the same offense.  Instead, his conduct implicates separate offenses identified within the trafficking provision of § 2-415.

Mr. Dennis' reliance on *Watkins v. State*, 855 P.2d 141, 142 (Okla. Crim. App. 1992) to support his argument does not dissuade us from our holding.  In *Watkins*, the defendant shipped a single package containing two types of controlled substances – cocaine and phencyclidine.  855 P.2d at 141.  The State charged Mr. Watkins with two counts of conspiracy to distribute a controlled dangerous substance under Okla. Stat. tit. 63, § 2-401(A)(1)[5] – one for the cocaine, and one for the phencyclidine.  *Id.*  Likewise, the State charged Mr. Watkins with two counts of possession with intent to distribute a controlled

_____

[4]  *Accord Ferguson v. State*, 644 P.2d at 122 (holding no double jeopardy violation occurs where separate caches of marijuana support one conviction for unlawful delivery and another conviction for possession with intent to distribute).

[5] Section 2-401(A)(1) states, in part, that it is unlawful for any person:

To distribute, dispense, transport with intent to distribute or dispense, possess with intent to manufacture, distribute, or dispense, a controlled dangerous substance ....

dangerous substance under § 2-401(A)(1) – again, one count for each type of drug. *Id.* Applying the "same evidence test," the Oklahoma Court of Criminal Appeals held a double jeopardy violation arose because § 2-401 did not distinguish between types or classifications of controlled dangerous drugs. *Id.* at 142. The court held the elements of each count of conspiracy to distribute a controlled substance were the same and could not be distinguished by the type of drug. Similarly, the court determined the elements in each count of possession with intent to distribute a controlled substance were also the same and could not be distinguished by the type of drug. *Id.* at 141-142. In so holding, the Oklahoma court determined that while the legislature had the power to create separate penal provisions prohibiting different acts that may be committed at the same time, it had not exercised that power in passing § 2-401, as that statute applied only to a "controlled dangerous substance," and not to separate drugs included within a single package. *Id.* at 142.

As both the state and federal district courts in this case determined, *Watkins* is clearly distinguishable from the facts here. First, Mr. Dennis' convictions arose from violating § 2-415, under which, as previously discussed, the legislature clearly intended to penalize different acts based on different elements of proof. Second, Mr. Dennis' conduct satisfied all element of both offenses – distribution

and possession. Finally, law enforcement officers found the cocaine base rocks in separate locations, and not together in a single package. Consequently, at the time of arrest, unlike in *Watkins*, Mr. Dennis plainly committed two separate offenses of distribution and possession of rock cocaine under § 2-415, for which he received two convictions. Under the circumstances presented, Mr. Dennis fails to show the Oklahoma court's adjudication resulted in a contrary or unreasonable application of clearly established federal law, as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

## 2. Two Tax Stamp Convictions

In a related argument, Mr. Dennis suggests his conviction for two tax stamp offenses – one for failure to affix a tax stamp on the rock cocaine sold and another for failure to affix a tax stamp on the rock cocaine retained – violates his right against double jeopardy. In support, Mr. Dennis relies on Okla. Stat. tit. 68, § 450.3, which requires a tax stamp to be immediately affixed at the time he brought the cocaine into the state. Specifically, § 450.3 states:

Manner of payment of tax – Intent and purpose of act

A. The tax levied by Section 2 of this act ... shall be paid by affixing stamps in the manner and at the time herein set forth.

When a dealer purchases, acquires, transports, or *imports into this state* a controlled dangerous substance on which a tax is levied by Section 2 of this act, *the dealer shall have the stamp affixed on the*

-17-

*controlled dangerous substance immediately after receiving the controlled dangerous substance.* Each stamp may be used only once.

*Taxes* imposed upon controlled dangerous substances ... *are due and payable immediately upon acquisition or possession of a controlled dangerous substance in this state by a dealer.*

B. It is the intent and purpose of this act that no dealer shall possess any controlled dangerous substance upon which a tax is imposed by Section 2 of this act unless the tax has been paid on the controlled dangerous substance *as evidenced by a stamp* issued by the Commission.

Okla. Stat. tit. 68, § 450.3 (emphasis added). In relying on this statute, Mr. Dennis is essentially contending only one tax stamp was required for the original quantity or rock of cocaine, before he divided it and sold part to Mr. Shaw.

If § 450.3 is read in isolation, it might lend support to Mr. Dennis' proposition that once he imported the one rock or quantity of cocaine into the state, only one tax stamp was required. However, in order to ascertain the intent of the legislature, Oklahoma law requires us to look to each part of the Controlled Dangerous Substance Tax Act, Okla. Stat. tit. 68, §§ 450.1 - 450.9, under which Mr. Dennis was convicted. *See generally Lozoya v. State*, 932 P.2d 22, 28-29 (Okla. Crim. App. 1996).

The Oklahoma Controlled Dangerous Substance Tax Act clearly requires Mr. Dennis to pay a tax proportionate to the quantity of rock cocaine he imported

into the state and immediately affix at least one tax stamp on receipt or importation of that cocaine. *See* Okla. Stat. tit. 68, §§ 450.2 and 450.3. However, the number of tax stamps required to be affixed depends on the quantity of drugs brought into the state. For example, § 450.2 requires a tax of $200 per gram or portion of a gram of controlled dangerous substance, and § 450.4(B) requires the stamps to be in denominations of $10. Arguably then, for one gram of rock cocaine, a dealer could be required to obtain and affix twenty tax stamps.[6] Regardless of the exact number of stamps required, for the purposes of resolving the issue at hand, we can clearly determine from these statutes that more than one tax stamp was required for the thirty grams of rock cocaine Mr. Dennis brought into the state. The remaining question is whether Mr. Dennis can be convicted of two counts of failing to apportion and affix those stamps proportionately to the rock cocaine he sold and that which he retained in his possession.

---

[6] For the purposes of this appeal, we need not discern the meaning of these sections other than to determine whether Mr. Dennis was required to obtain more than one tax stamp for the ten grams he sold and the 20.7 grams he possessed, and to then affix the proper corresponding number of tax stamps to the portion he sold and the portion he retained. We leave the specifics of the exact number of tax stamps required for any portion of a controlled dangerous substance to the Oklahoma Tax Commission, which is required to promulgate rules and regulations for a uniform system of providing, affixing and displaying official tax stamps. *See* Okla. Stat. tit. 68, § 450.4(A).

In addressing this issue, we note another relevant provision of the Act provides, in part:

> Any dealer manufacturing, *distributing*, producing, shipping, transporting, importing *or possessing* any controlled dangerous substance *without affixing the appropriate stamp*, upon conviction, is guilty of a felony ....

Okla. Stat. tit. 68, § 450.8(B) (emphasis added). In interpreting this provision, the magistrate judge simply determined it "creates a separate offense for failure to affix the requisite tax stamp with regard to each act identified therein. The legislative intent is clear that punishment for both offenses [of distribution and possession] is authorized." The state district court similarly held "there were two separate and distinct instances of 'distribution and/or possession of controlled dangerous substance without purchasing and affixing tax stamps.'" We agree.

Our reading of both §§ 450.3 and 450.8 convinces us the two statutes may be reconciled, and are not inconsistent. Specifically, § 450.3 deals primarily with "when" (1) a dealer is required to pay taxes – namely, immediately on his possession or importation of the controlled dangerous substance, and (2) the tax stamp(s) would be affixed – namely, immediately on the dealer's possession of the substance. In contrast, § 450.8 identifies which acts require tax stamps, making it a felony offense for a dealer to fail to affix tax stamps when he transports, imports, manufactures, produces, distributes, or possesses a controlled

-20-

dangerous substance. Applying both statutes to the case at hand, it is clear that under Okla. Stat. tit. 68, § 450.3, Mr. Dennis was required to pay, based on total weight, a tax on the total quantity of rock cocaine he imported into the state, and to immediately affix the appropriate number of tax stamps to that cocaine. In turn, under § 450.8, Mr. Dennis was required to affix the necessary number of tax stamps on the rock cocaine he sold to Mr. Shaw, *and* on the rock cocaine he retained. Under these circumstances, we conclude no double jeopardy violation arose in convicting Mr. Dennis of two tax stamp violations for failing to affix the necessary number of tax stamps to the rock cocaine distributed to Mr. Shaw and a separate, corresponding number of tax stamps to the rock cocaine Mr. Dennis retained and possessed. We hold the Oklahoma court's adjudication of this issue was not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

### 3. Tax Stamp Violations for Trafficking of Same Cocaine

In his last Double Jeopardy Clause claim, Mr. Dennis argues that because he already received two tax-stamp convictions, he cannot also be convicted for what he describes as the "lesser included offense" of trafficking the same cocaine. Mr. Dennis bases his argument on the fact the elements required for "trafficking" under § 2-415 are the same as for the offense of failing to affix the proper tax

stamp under §§ 450.1 - 450.9, except the tax stamp offense requires the added element of requiring a tax stamp to be affixed. Because the elements are almost identical, Mr. Dennis claims the trafficking offenses are the "lesser included offense" of the tax stamp convictions. To support his argument, Mr. Dennis relies on *State v. Uriarite*, 815 P.2d 193, 195 (Okla. Crim. App. 1991), in which the Oklahoma Court of Criminal Appeals found the offense of "Unlawful Possession of CDS With Intent to Distribute" a lesser included offense of "Unlawful Possession of CDS With Intent to Distribute Within 1000 Feet of School Grounds" for double jeopardy purposes.

We agree the offense of "trafficking" under § 2-415 requires four elements, including: (1) knowing and intentional (2) possession, distribution manufacture or importation (3) of five grams or more (4) of cocaine base. Okla. Stat. tit. 63, § 2-415. *See also White*, 900 P.2d at 991. The offense of failing to affix the appropriate tax stamp under § 450.8 requires proof of a fifth element – no tax stamp was "obtained, affixed and displayed." *White*, 900 P.2d at 991. While the elements are similar, our determination of whether Mr. Dennis' punishment under each statute constitutes multiple punishment for the same offense in violation of the Double Jeopardy Clause depends on the Oklahoma legislature's intent. *See Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983). If the legislature intended

cumulative punishments for both violations and the sentences are imposed in the same proceeding, no double jeopardy violation arises. *Id.* This is true "regardless of whether [the] two statutes proscribe the 'same' conduct under [the] *Blockburger* [test,]" which we apply when the legislative intent is unclear. *Id.*

We begin our analysis by noting the Oklahoma courts have not ruled on the Oklahoma legislature's intent with respect to the two statutes at issue in this case. Our review of Oklahoma's Controlled Dangerous Substance Tax Act shows the legislature clearly intended the punishment for the statutory offense of failure to affix tax stamps to be in addition or cumulative to the punishment for the statutory trafficking offense found in the Oklahoma Uniform Controlled Dangerous Substance Act. *Compare* Okla. Stat. tit. 68, §§ 450.2, 450.8 *with* Okla. Stat. tit. 63, § 2-415. As the magistrate judge in this case pointed out:

> Section 450.1(2) of the Tax Act defines "dealer" as a person who "in violation of the Uniform Controlled Dangerous Substances Act manufactures, distributes, produces, ships, transports, or imports into Oklahoma or in any manner acquires or possesses ... seven or more grams of any controlled dangerous substance ...." This statutory language makes clear that when the legislature created additional penalties for the crime of failure to affix a drug tax stamp, the legislature recognized that the drug tax stamp requirement would apply against one who was also in violation of a separate criminal law....
>
> Further confirmation that punishment for violation of the Tax Act was intended to be in addition to other punishments is found in § 450.8(C) which provides: 'Nothing in this Act may in any manner

-23-

provide immunity for a dealer from criminal prosecution pursuant to Oklahoma law.' *See* Okla. Stat. tit. 68, § 450.8(C). This section recognizes that compliance with the tax stamp requirements does not insulate a dealer who possesses or distributes a taxable substance like cocaine base from prosecution or conviction under Oklahoma law.

Having reviewed the Oklahoma statutes at issue, we are convinced Mr. Dennis' convictions for trafficking and failing to affix tax stamps do not violate the Double Jeopardy Clause. While the elements for both offenses are similar, it is readily apparent the legislature intended the punishment for the trafficking offense to be cumulative to the punishment for failing to affix a tax stamp.[7] Given this intent, we cannot conclude the two statutes at issue here are similar to the two statutes at issue in *Uriarite*. In *Uriarite*, the defendant was convicted of unlawful possession of a controlled dangerous substance with intent to distribute under Okla. Stat. tit. 63, § 2-401, and unlawful intent to distribute a controlled dangerous substance with intent to distribute within 1,000 feet of a school ground under Okla. Stat. tit. 63, § 2-401(A). 815 P.2d at 194-95. The Oklahoma court

---

[7] Our decision comports with state decisions dealing with the same issue. In those cases, the state courts determined punishment for both failure to pay a drug tax and for delivery- or possession-related offenses did not violate the Double Jeopardy Clause because their respective state legislatures clearly intended the punishment for both offenses to be cumulative. *See State v. Detweiler*, 544 N.W.2d 83, 91-92 (Neb. 1996); *Anderson v. State*, 649 N.E.2d 1060, 1062-63 (Ind. Ct. App. 1995); *de La Garza v. State*, 898 S.W.2d 376, 377-78 (Tex. App. 1995); *State v. Gallup*, 500 N.W.2d 437, 442-43 (Iowa 1993); *Ex parte Kopecky*, 821 S.W.2d 957, 959-61 (Tex. Crim. App. 1992).

found the legislative intent was entirely unclear as to the application of one offense to the other. *Id.* at 195. In so finding, the court compared the elements of each offense and held a double jeopardy violation occurred because a single act could constitute a violation of both offenses. *Id.* In contrast, in this case the legislature clearly intended cumulative punishments to arise from both the tax stamp and the trafficking offenses, and thus, the fact the elements of each offense are similar is immaterial to our double jeopardy determination.

Our discussion does not end here. In *White,* 900 P.2d 982, the Oklahoma Court of Appeals briefly addressed the double jeopardy consequences involved when a defendant is convicted of the same two offenses involved in this case. In *White*, like here, the defendant was convicted of both a § 2-415 trafficking violation and a § 450 tax stamp violation. *Id.* at 985. While the Oklahoma court did not discuss the legislature's intent as to the cumulative nature of the punishments, it did explicitly hold that "where a defendant is punished for both failing to pay a drug tax and committing a drug offense, all in the same proceeding, no Double Jeopardy problem exists." *Id.* at 996.

We find the Oklahoma Court of Criminal Appeal's ruling in *White* consistent with the legislature's intent to create cumulative punishments and the

Supreme Court's decision in *Kurth Ranch* – to the extent it holds no double jeopardy violation arises when both punishments are addressed in one proceeding. For the same reasons, we conclude the Oklahoma court that adjudicated Mr. Dennis' case properly determined no double jeopardy issue arose when he received cumulative punishments in the same proceeding for the separate tax stamp and trafficking offenses. We hold the Oklahoma court's adjudication on this issue comports with § 2254(d)(1) because it was not contrary to or an unreasonable application of federal law as determined by the Supreme Court.

### 4. Section 11 Violation

In a separate but related argument to his double jeopardy claims, Mr. Dennis argues his convictions violate Okla. Stat. tit. 21, § 11, which prohibits multiple punishments for a single act. Mr. Dennis generally contends that in enacting § 11, the legislature intended to prevent the state from imposing multiple punishments under the "same statute" for a single act. He relies on *Hale v. State*, 888 P.2d 1027 (Okla. Crim. App. 1995), and cases following *Hale*, to support his position.

The pertinent part of § 11 states:

[A]n act or omission which is made punishable in different ways by different provisions of this title may be punished under any of such provisions, ... but in no case can a criminal act or omission be punished under more than one section of law.

-26-

Okla. Stat., tit. 21, § 11. The Oklahoma Court of Criminal Appeals determined § 11 "grants no greater protection than what is clearly spelled out in ... [its] language." *Davis*, 993 P.2d at 126. In so holding, the Oklahoma Court rejected the language in *Hale* which states that § 11 "is violated when a defendant is convicted of two offenses, one of 'which is ... a mere means to some other ultimate objective, ... or ... merely a different incident or facet of some primary offense.'" *Id.* at 126 (quoting *Hale*, 888 P.3d at 1028). In rejecting *Hale's* "ultimate objective" or "primary offense" test, the Oklahoma Court stated:

> The proper analysis of a claim raised under Section 11 is then to focus on the relationship between the crimes.... One act that violates two criminal provisions cannot be punished twice, absent specific legislative intent.
>
> *This analysis does not bar the charging and conviction of separate crimes which may only tangentially relate to one or more crimes committed during a continuing course of conduct.*

*Id.* at 126-27 & n.5 (emphasis added).

We are bound to accept the Oklahoma court's construction of its state statutes, including § 11. *See Missouri*, 459 U.S. at 368 (relying on *O'Brien v. Skinner*, 414 U.S. 524, 531 (1974)). Applying the Oklahoma court's construction of § 11 to the case at hand, we have already ascertained Mr. Dennis' sale and distribution of rock cocaine to Mr. Shaw constitutes a separate and distinct crime from Mr. Dennis' possession of the remaining cocaine. Specifically, at the point

Mr. Dennis sold and no longer retained control of the ten grams of rock cocaine, he committed the separate and distinct criminal offense of "distribution." In turn, the fact he retained the remaining rock cocaine evidences he separately committed the criminal offense of "possession."[8] While these two acts or offenses may have occurred during a continuing course of conduct in which Mr. Dennis sold a portion of his rock cocaine while still possessing the remaining cocaine, the two acts are, at most, only tangentially related and thereby insufficient to cause a § 11 violation.

For these reasons, we reject Mr. Dennis' argument § 11 applies to his convictions. Because § 11 does not apply, we also reject his claim that the state's failure to apply § 11 violated his due process and equal protection rights. Accordingly, the Oklahoma court's adjudication of this issue comports with the requirements of 28 U.S.C. § 2254(d)(1).

### 5. Merger

Mr. Dennis claims "there was a merger of offenses under the facts and

---

[8] If, instead, Mr. Dennis had sold the entire 30.7 grams to Mr. Shaw, he conceivably would have committed only the offense of distribution. However, by keeping some cocaine, Mr. Dennis also committed the separate and distinct criminal offense of possession.

-28-

circumstances of the case that prohibits separate punishments, or at the minimum prohibits consecutive sentencing." Specifically, Mr. Dennis contends his offenses should have been merged because they stemmed from a single transaction or included underlying offenses. Even if his actions constituted separate offenses, he contends the state court should have merged his offenses together at sentencing under Okla. Stat. tit. 22, § 976,[9] and thus sentenced him to concurrent instead of consecutive sentences.

As previously determined, Mr. Dennis clearly was convicted of four separate and distinct offenses so no double jeopardy implications arise for the purpose of merging his offenses. As to the sentencing issue, the application of Okla. Stat. tit. 22, § 976 is a question of state law, not cognizable on federal habeas review. *See Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968), *cert. denied*, 394 U.S. 935 (1969). We afford wide discretion to the state trial court's

_____

[9] Section 976 states:

> If the defendant has been convicted of two or more offenses, before judgment on either, the judgment may be that the imprisonment upon any one may commence at the expiration of the imprisonment upon any other of the offenses. Provided, that the sentencing judge shall, at all times, have the discretion to enter a sentence concurrent with any other sentence.

Okla. Stat. tit. 22, § 976.

sentencing decision, and challenges to that decision are not generally

constitutionally cognizable, unless it is shown the sentence imposed is outside the

statutory limits or unauthorized by law. *See Haynes v. Butler*, 825 F.2d 921, 923-

24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988); *see also Handley*, 398

F.2d at 352). Generally, our review of a sentence ends once we determine the

sentence is within the limitation set by statute. *See Vasquez v. Cooper*, 862 F.2d

250, 255 (10th Cir. 1988). In this case, the sentences Mr. Dennis received are

within the statutory range of permissible punishment.[10] We find no merit to Mr.

Dennis' merger arguments and find the state court's adjudication of these

arguments satisfies the requirements of 28 U.S.C. § 2254(d)(1).

## 6. Vagueness of § 2-415

Mr. Dennis' final underlying constitutional claim centers on his contention

Okla. Stat. tit. 63, § 2-415 is unconstitutionally vague. Specifically, Mr. Dennis

claims a denial of due process and equal protection rights on what he perceives as

---

[10] The statutory sentences and fines Mr. Dennis received for his trafficking convictions are discussed in the following section. His two life sentences and $100,000 fines are within the statutory range for his trafficking convictions. As to his stamp tax convictions, § 450.8 sets punishment in prison for not more than five years. Okla. Stat. tit. 68, § 450.8. However, because Mr. Dennis was convicted of a prior felony, Okla. Stat. tit. 21, § 51 applies and provides for "a term not exceeding ten (10) years." Therefore, Mr. Dennis' two ten-year sentences for failure to affix tax stamps are within the statutory range.

the unconstitutional vagueness of § 2-415, which calls for enhanced penalties for trafficking certain quantities of "cocaine base" as opposed to trafficking greater quantities of "cocaine." Mr. Dennis raised this claim in his direct state appeal. In affirming Mr. Dennis' conviction on direct appeal, the Oklahoma Court of Criminal Appeals found no merit to his vagueness argument. We review the merits of Mr. Dennis' vagueness claim to determine whether the Oklahoma Court of Criminal Appeals' adjudication of this issue resulted in a decision contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

To understand Mr. Dennis' argument, we must first examine the portion of § 2-415 he attacks, as well as the statutory scheme under which he was sentenced. We begin by noting § 2-415, under which Mr. Dennis was convicted, applies to those individuals considered to be "trafficking in illegal drugs." Okla. Stat. tit. 63, § 2-415(B)(3). In order to be "trafficking in illegal drugs," a dealer must distribute, manufacture, bring into the state, or possess *a certain quantity* of the controlled dangerous substance. *Id.*, § 2-415(B)(1). Section 2-415 applies if the quantity of the controlled dangerous substance at issue involves twenty-eight grams or more of "cocaine or coca leaves," or five grams or more of "cocaine base." *Id.*, § 2-415(C)(2)(a) and (C)(7)(a). Section 2-101(5) defines "coca

leaves" to include "cocaine and any compound, manufacture, salt, derivative, mixture or preparation of coca leaves, except derivatives of coca leaves which do not contain cocaine or ecgonine." *Id.*, § 2-101(5). Although the Oklahoma statutes do not specifically define "cocaine base," § 2-415(A)(7) expressly states "trafficking" applies to "cocaine base, commonly known as 'crack' or 'rock.'"

The monetary fines for trafficking twenty-eight grams or more of "cocaine" or "coca leaves" and for trafficking five grams or more of "cocaine base" are the same – not less than $25,000 and not more than $100,000. *Id.*, § 2-415(c)(2)(a) and (c)(7)(a). In addition, the terms of imprisonment are identical – both require not less than ten years nor more than life in prison.[11] *Id.*, §§ 2-415(D)(1); 2-401(B)(1); 2-206(4). In contrast, the term of imprisonment for simple possession or distribution of any form of cocaine, in quantities not constituting "trafficking," is "not less than five (5) years nor more than life" and the fine is not more than $100,000. Okla. Stat. tit. 63, § 2-401(B)(1). Consequently, the primary

---

[11] Section 2-415 requires a term of imprisonment for trafficking any form of cocaine of "[n]ot less than twice the term of imprisonment provided for in Section 2-401." Okla. Stat., tit. 63, § 2-415(D)(1). Section 2-401 requires a term of imprisonment of not less than five years nor more than life for Schedule II narcotic drugs. *Id.*, § 2-401(B)(1). Under §§ 2-206 and 2-101(26), cocaine leaves, cocaine and any compound thereof are considered a Schedule II narcotic drug. *Id.*, §§ 2-206, 2-101(26). Because the term of imprisonment must be at least twice the five years provided in § 2-401, the term of imprisonment under § 2-415 is ten years to life.

difference between a conviction for "trafficking" and a conviction for simple possession or distribution (*i.e.*, "non-trafficking") of cocaine or cocaine base is that the minimum sentence for "trafficking" is ten years compared to a minimum sentence of five years for "non-trafficking." The minimum fine for "trafficking" is $25,000, while no minimum fine exists for "non-trafficking." The maximum fine for both offenses is $100,000.

With this statutory structure in mind, we look more closely at Mr. Dennis' argument. Mr. Dennis suggests § 2-415 and other related statutes are unconstitutionally vague because they do not "provide any definitional or explanatory chemical, biological or commonly understood distinction" between trafficking in "cocaine" and "cocaine base." Specifically, Mr. Dennis contends § 2-415 is unconstitutionally vague because it does not clearly distinguish "cocaine" from "cocaine base" yet requires only five grams of "cocaine base" to constitute "trafficking," while it takes a total of twenty-eight grams of "cocaine" to constitute "trafficking." As a result, Mr. Dennis asserts the Oklahoma legislature impermissibly provides separate, distinct and unequal punishments for "trafficking" in "cocaine" as opposed to "cocaine base." Mr. Dennis points out that if the twenty-eight-gram limit for "cocaine" had been applied in his case, he would not have received two "trafficking" convictions under § 2-415 for the ten

grams distributed and 20.7 grams possessed, because neither equals twenty-eight grams as required for a "cocaine" trafficking conviction.[12]  Continuing with this premise, Mr. Dennis claims the state would only have been able to charge him with "non-trafficking" offenses under § 2-401, which provides for a lesser sentence, and thus "the jury might have imposed a lesser sentence."

Admittedly, "vague sentencing provisions may post constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute."  *United States v. Batchelder,* 442 U.S. 114, 123 (1979). However, to raise a vagueness claim, it is not sufficient for Mr. Dennis to simply complain the Oklahoma legislature should have chosen clearer and more precise language to clarify any differences between cocaine base and cocaine, and the corresponding fines and sentences.  *See United States v. Powell,* 423 U.S. 87, 94 (1975).  As we have previously held, "the Constitution does not require the legislature to incorporate Webster's [Dictionary] into each statute in order to insulate it from vagueness challenges."  *Stewart v. United States Trustee (In re*

---

[12]  At oral argument, Mr. Dennis' counsel described the cocaine in this case as rock cocaine, and in his brief, Mr. Dennis does not seem to dispute the fact he distributed and possessed "cocaine base," which the Oklahoma legislature intended to also mean "rock cocaine."  Instead, Mr. Dennis suggests the statute does not sufficiently differentiate "cocaine base" from "cocaine."  We disagree for the reasons set forth in our discussion.

*Stewart)*, 175 F.3d 796, 811 (10th Cir. 1999) (quotation marks and citation omitted). Instead, the void-for-vagueness doctrine requires only that a penal statute "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). As the Minnesota Court of Appeals stated, when addressing the same issue:

> In deciding whether the term "cocaine base" renders the statute unconstitutional, we are guided by the well-settled rule that a statute, if it can be made constitutionally definite by a reasonable construction, must be given that construction .... Words of a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary.

*State v. Moore*, 431 N.W.2d 565, 567-68 (Minn. Ct. App. 1988) (relying on *United States v. Harriss*, 347 U.S. 612, 618 (1954); *Burns v. Alcala*, 420 U.S. 575, 580-81 (1975)). Moreover, it is well established that "[v]agueness challenges to statutes which do not involve First Amendment rights are limited to the facts of the case at hand." *United States v. Hines*, 696 F.2d 722, 727 (10th Cir. 1982) (relying on *United State v. Mazurie*, 419 U.S. 544, 550 (1975)).

Applying these principles to the term "cocaine base," we note the Oklahoma legislature, by distinguishing "cocaine" from "cocaine base" throughout the Controlled Dangerous Substance Act, clearly intended "cocaine"

-35-

and "cocaine base" to be treated as different substances. By requiring only five grams of "cocaine base" to constitute "trafficking," in comparison to twenty-eight grams of "cocaine," it is also evident the legislature intended to differentiate between the punishment for trafficking in smaller quantities of "cocaine base" as opposed to trafficking in larger quantities of "cocaine."

It is also clear the Oklahoma legislature intended "cocaine base" to include crack or rock cocaine, when it stated § 2-415 shall apply to "[c]ocaine base, commonly known as 'crack' or 'rock.'"[13] In referring to "cocaine base" as "crack" or "rock" the Oklahoma legislature recognized, as do our federal sentencing guidelines, that "'crack' is the street name for a form of cocaine

_____

[13] Unlike here, the Minnesota statute at issue in *Moore* did not have the benefit of this or any provision defining "cocaine base." Thus, the Minnesota Court of Appeals addressed this issue by determining the common meaning of the word "base," stating:

> The word "base" ... has an ordinary meaning when used to describe a chemical substance. Webster's Dictionary defines "base" as " the chief active ingredient ... the predominating substance ... left as a residue on refining.... The American Heritage Dictionary defines "base" as a "fundamental ingredient" or "chief constituent."

431 N.W.2d at 568 (quotation marks, alterations and citations omitted). Based in part on this definition, the Minnesota court concluded its legislature intended, by using the word "base," for the substance of "cocaine base" to contain a chemical formula different than "cocaine." *Id.*

-36-

base."[14] Moreover, we take judicial notice of the fact that cocaine base, including rock and crack cocaine, are generally considered very different substances than what is commonly considered "cocaine." On the federal level, we have faced this issue numerous times in cases contesting the constitutionality of federal statutes and sentencing guidelines that provide stiffer sentences for "cocaine base" offenses than for "cocaine" offenses.[15] *See, e.g.*, *Brooks*, 161 F.3d at 1247 (holding Tenth Circuit precedent forecloses argument that the distinction between cocaine powder and crack cocaine violates due process and equal protection rights); *United States v. Thurmond*, 7 F.3d 947, 950, 953 (10th Cir. 1993) (concluding "cocaine base is simply a different drug than cocaine powder, with a different chemical composition"), *cert. denied*, 510 U.S. 1199 (1994); *United States v. Turner*, 928 F.2d 956, 960 (10th Cir. 1991) (holding "different penalties for cocaine base and cocaine in its other forms do not violate due process.")

---

[14] *See* U.S.S.G. § 2D1.1(c)(Drug Quantity Table, n. D) (stating crack cocaine is "usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form").

[15] The federal sentencing guidelines equate one gram of "cocaine base" or "crack" to 100 grams of various forms of "cocaine." *See United States v. Brooks*, 161 F.3d 1240, 1247 (10th Cir. 1998) (relying on U.S.S.G. § 2D1.1(c) (Drug Quantity Table)). Obviously, this one-to-100 gram ratio is a much higher ratio than the Oklahoma ratio.

Given § 2-415 equates "cocaine base" with "rock" or "crack" cocaine, we hold the statute defines the criminal offense of trafficking in "cocaine base" with sufficient definiteness that it does not violate Mr. Dennis' due process or equal protection rights. Because the Oklahoma court's adjudication on this issue was not contrary to or an unreasonable application of federal law as determined by the Supreme Court, Mr. Dennis' vagueness argument must fail.

## 7. Ineffective Assistance of Counsel

Having reviewed Mr. Dennis' underlying constitutional claims raised in his habeas corpus petition, we conclude that although novel, each lacks merit. In so concluding, it follows Mr. Dennis' counsel's failure to raise these meritless claims at trial or on direct appeal did not prejudice Mr. Dennis' case. In other words, Mr. Dennis fails to show "'there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.'" *Hickman*, 160 F.3d at 1273 (quoting *Strickland*, 466 U.S. at 694). Our conclusion comports with the Oklahoma Court of Criminal Appeals' rejection of Mr. Dennis' ineffective assistance of counsel claim, based on its determination none of his underlying claims constituted a "dead bang winner" and therefore, no prejudice arose as required by *Strickland*, 466 U.S. at 687-88. (Apt. App. at 36-37.) Accordingly, we hold the Oklahoma court's adjudication on this issue meets

the requirements of 28 U.S.C. § 2254(d)(1).

## IV. CONCLUSION

For the foregoing reasons, Mr. Dennis fails to establish the prejudice required for his ineffective assistance of counsel claim, or to otherwise independently provide a basis for relief as sought in his habeas petition. We are satisfied the Oklahoma court's decision on Mr. Dennis' ineffective assistance of counsel claim and underlying claims was not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). Accordingly, the district court's decision denying Mr. Dennis a writ of habeas corpus is **AFFIRMED**.