FILED
United States Court of Appeals
Tenth Circuit

April 10, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

QUINTON LEE AMEY,

   Petitioner - Appellant,

v.

ROBERT PATTON, Director,

   Respondent - Appellee.

No. 14-5097
(D.C. No. 4:11-CV-00258-TCK-TLW)
(N.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **TYMKOVICH**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

   Quinton Lee Amey was convicted in Oklahoma state court of feloniously pointing a firearm and possessing a firearm after a former felony conviction. His 28 U.S.C. § 2254 habeas petition was denied by the district court. Proceeding pro se and wanting to appeal from the denial, he requests a certificate of appealability (COA) to appeal. We deny the request and dismiss this matter.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Amey's convictions arise out of a confrontation he had with Ninaree Furch and her daughter, T.K. The trial was bifurcated. The jury first considered the charge of feloniously pointing a firearm.

As to that charge, Furch and T.K. testified they were out walking one evening in August 2008 when a man ran up and blocked their path forward. The man was African-American, had braided hair, and was wearing "dark colored Dickies" pants and green plaid boxers, but no shirt. R., Vol. II at 655. Furch was concerned because she thought "he was on something." *Id.* at 662.

When Furch turned away to seek help from "[t]wo white young men" she had passed, *id.*, Vol. II at 657, T.K. saw their assailant point a handgun "to the back of [her mother's] head" as he said, "I'll blow your F'ing brains out," *id.*, Vol. I at 192, 195. Furch heard the comment and turned around. The man then began beating his chest with the gun, saying he was a security guard and was there to "help [them] rather than white people messing with [them]." *Id.* at 197.

Furch and T.K. eventually got past him and called 911 from a nearby home. They both testified to Amey being the man who had accosted them.

Police officer Brian Filby testified to having been dispatched to investigate the 911 call. He arrived in the area five minutes after the call and saw "a black male . . . frantically waiving his arms trying to get [him] to stop to talk to him." *Id.*, Vol. II at 688. The man was "was very excited and loud, [acting] definitely like something was

wrong." *Id.* at 689. He told Filby there was a "black male with braids and no shirt" down the street with a gun. *Id.*

Filby "continued looking around in the area" and "finally found [Furch and T.K.]." *Id.* at 690, 691. T.K. told Filby or another officer that the man who had accosted her and her mother "was a black male, approximately five-seven, 200 pounds, and he had braids in his hair," and he was wearing "blue or black Dickie pants . . . [and] blue or green plaid boxers that you could see . . . hanging out the top of his pants." *Id.* at 693.[1] Filby then went over to where two people were standing. One of them "matched the [assailant's] description really well other than he was wear[ing] a shirt." *Id.* at 694. Filby arrested that man, who was Amey. No gun was found.

The jury convicted Amey, and the case proceeded to the second stage, where the jury considered the charge of possessing a firearm after a former felony conviction. According to Amey's testimony he had no firearm in his possession when he confronted Furch and T.K., and he approached Furch only after hearing her "cussing loud[ly]." R., Vol. II at 772. On cross-examination, Amey admitted to four prior felony convictions and being shirtless before approaching Furch and T.K.

---

[1] On direct examination, Officer Filby testified T.K. gave him a description of the assailant before continuing with his search for that man. *See* R., Vol. II at 692-94. But on cross-examination and redirect, Officer Filby stated he did not speak with Furch and T.K. "before [ Amey] was arrested." *Id.* at 704; *see also id.* at 700-01. Rather, "[t]here was another officer . . . talking with" Furch and T.K. *Id.* at 704.

The jury returned another guilty verdict and recommended incarceration for thirty-five years on the pointing-a-firearm count and fifteen years on the illegal possession count. The court accepted the jury's recommendations and ordered the sentences to be served consecutively. The Oklahoma Court of Criminal Appeals (OCCA) summarily affirmed the convictions and sentence.

## DISCUSSION

## I. Standards of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a COA before a state prisoner may appeal from a denial of habeas relief. To be entitled to a COA the applicant must demonstrate that jurists of reason could disagree with the district court's resolution of his constitutional claims or conclude the issues deserve further treatment. *See* 28 U.S.C. § 2253(c)(1)(A), (c)(2); *Dulworth v. Jones*, 496 F.3d 1133, 1137 (10th Cir. 2007).

Under AEDPA, if the state court adjudicated the merits of a claim, a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.*.§ 2254(d)(2). With the "clearly established" requirement as our guide, we must "look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that

- 4 -

resolution was debatable amongst jurists of reason." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003).

## II. Sufficiency of the Evidence

On direct appeal, Amey claimed the evidence was insufficient to support his convictions because the accounts Furch and T.K gave of their encounter with him varied from the night of his arrest to the time of trial. For instance, when Amey was arrested, T.K. told police she pushed him away from her mother, but at trial, T.K. admitted she never touched Amey. And Furch told police Amey was armed with "a .45 automatic," but at trial she testified the gun was "a .32 or .38 revolver." R., Vol. II at 671, 662.

The OCCA concluded any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The district judge concluded the OCCA did not unreasonably apply *Jackson*, explaining: "[al]though there were several inconsistencies in T.K.'s and Furch['s] trial testimony when compared to their prior statements, the testimony regarding the possession of a gun and [Amey's] actions with the gun were consistent." R., Vol. I at 274.

Not only do we agree, but we cannot discern any basis upon which jurists of reason would see a reason for debating the propriety of the assessment. T.K.'s testimony about Amey pointing a handgun at her mother, threatening to shoot her, and beating his chest with the gun was not inconsistent with T.K.'s earlier statements

and was consistent with her mother's testimony. The variations in their descriptions of their encounter with Amey do not show the jury's guilty verdicts were outside "the bounds of reason," *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (internal quotation marks omitted). It is well within the ken of a jury to decide whether witness testimony is reliable. Weighing inconsistent statements is part of that process. The district judge's rejection of Amey's sufficiency argument is not debatable.

## III. The Confrontation Clause

A. Hearsay

Before the OCCA Amey also claimed the admission of the statement by the "unidentified and excited African-American" concerning a gunman down the street violated the Confrontation Clause. R., Vol. I at 64. The OCCA concluded the statement was admissible as an excited utterance and did not violate the Confrontation Clause because it was not testimonial. The district judge agreed, stating "the statement squarely falls into the 'ongoing emergency' category of nontestimonial hearsay statements." *Id.* at 278.

Again we see no basis for considering this matter further; the correctness of the analysis is not reasonably debatable. The Sixth Amendment's Confrontation Clause bars admission of a testimonial hearsay statement when the witness is unavailable to testify at trial and the defendant had no prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

A hearsay statement is testimonial if made with "a primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 131 S. Ct. 1143, 1155 (2011). But "[w]hen . . . the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the Confrontation Clause." *Id.*

Here, the witness told Filby a gunman was down the street, "not to provide a solemn declaration for use at trial, but to bring an end to an ongoing threat," *Williams v. Illinois*, 132 S. Ct. 2221, 2243 (2012) (plurality opinion). The Confrontation Clause is not implicated by such a non-testimonial statement. *See Bryant*, 131 S. Ct. at 1155.

B. Impeachment

At trial, defense counsel sought to impeach Furch with evidence of her conviction for feloniously pointing a firearm. The trial judge allowed counsel to inquire whether Furch had ever been convicted of a felony, but would not permit inquiry as to the specific felony.

On appeal to the OCCA, Amey argued revealing the nature of the prior conviction was necessary because Furch's "confusion about the type of gun she claimed to see might be understandable for a person unfamiliar with guns, but Furch['s] criminal record reveals . . . she has more than a passing familiarity with firearms." R., Vol. I at 70. The OCCA decided the limitation on impeachment was within the trial court's discretion, and there was no Confrontation Clause violation.

The district judge also determined the impeachment limitation was reasonable and did not violate Amey's right of confrontation. Even with the limitation, he noted, the jury not only learned Furch had a prior felony conviction but that she was "pretty familiar with handguns," *id.* at 282 (internal quotation marks omitted), and knew "there's a big difference between a revolver and an automatic," *id.* at 282-83 (internal quotation marks omitted).

"[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, but not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. DeChristopher*, 695 F.3d 1082, 1096 (10th Cir. 2012) (internal quotation marks omitted). A violation occurs only when "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

The jury had the necessary information to weigh Furch's credibility before reaching a verdict. Despite not being permitted to inquire about the nature of her felony conviction, Amey was still able to show the jury she was familiar with firearms and to call into question her varying descriptions of the gun she saw. Consequently, there was no Confrontation Clause violation, and thus, the district judge properly found the OCCA's decision on this point not unreasonable.

## IV.  Ineffective Assistance of Counsel

On direct appeal, Amey claimed his trial counsel was ineffective because she failed to (1) investigate the facts underlying Furch's felony conviction, which would have revealed Furch pointed a gun at a security guard; (2) obtain mental-health records regarding Furch; and (3) offer into evidence a videotaped interview showing Amey was sober when arrested.  The OCCA rejected Amey's claims, and the district judge determined the OCCA did not unreasonably apply *Strickland v. Washington*, 466 U.S. 668, 691 (1984) (requiring deficient performance and prejudice to prevail on an ineffective-assistance claim). His determination is not debatable for at least three reasons.

First, whether Amey claimed to be a security guard during his encounter with Furch and T.K. is irrelevant to the charges for which he was on trial.[2]  Equally irrelevant is the fact that the victim of Furch's crime may have been a security guard. Thus, the OCCA could have reasonably determined trial counsel's failure to investigate the circumstances underlying Furch's conviction would not have been prejudicial.

---

[2]   The elements of feloniously pointing a firearm are (1) willfully or without lawful cause pointing a firearm at any person, (2) to threaten the person or with the intent of "discharging the firearm or with any malice or for any purpose of injuring . . . or for purposes of whimsy, humor or prank, or in anger or otherwise."  21 Okla. Stat. Ann. § 1289.16.  Possessing a firearm after a former felony conviction requires (1) possessing a firearm or having it under the person's immediate control, (2) after a felony conviction in any state or federal court.  *Id.* § 1283(A).

Second, regarding counsel's failure to obtain Furch's mental-health records, Amey fails to indicate how Furch's testimony was affected by any mental health issues. Indeed, he admits he "is speculating to a certain extent." Appl. for COA at 13. Speculation is insufficient to obtain habeas relief on an ineffective assistance claim. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011) (explaining habeas relief is available only "where there is *no possibility* fairminded jurists could disagree . . . the state court's decision conflicts with th[e] [Supreme] Court's precedents" (emphasis added)).

Third, Amey does not explain how his appearing to be sober when interviewed by police would have had any effect on the jury's verdict. Evidence of sobriety was irrelevant to the charges against him, and he testified he had been "drinking that night." R., Vol. II at 783. In short, Amey has not shown how he was prejudiced by counsel's failure to offer the videotaped interview into evidence.

## V. State Law Claims

Amey argued on direct appeal his convictions violated Oklahoma's statutory double-jeopardy proscription. *See* 21 Okla. Stat. Ann. § 11. Additionally, he sought modification of his sentences from consecutive to concurrent. The OCCA denied relief.

The district judge first noted Amey's double-jeopardy argument was a state-law issue not cognizable in federal habeas proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Next, the district judge observed challenges to a state

- 10 -

court's sentencing decision are cognizable only if the sentence exceeds statutory limits, *see Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000), and Oklahoma law authorizes consecutive sentences, *see* 22 Okla. Stat. Ann. § 976. Those bed rock propositions are not subject to debate.

**CONCLUSION**

We deny Amey's application for a COA and dismiss this matter.

Entered for the Court

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk