**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 12 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID LEON CUMMINGS,

        Petitioner - Appellant,

    v.

EDWARD EVANS, Warden;
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA

        Respondents - Appellees.

No. 96-6382

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. CIV-94-1492-A)**

---

Submitted on the briefs:   *

David Leon Cummings, Petitioner-Appellant, appeared pro se on the opening brief.

Michael G. Katz, Federal Public Defender, and Jenine Jensen, Assistant Federal Public Defender, Denver, Colorado, were appointed to represent him on the supplemental brief.

W.A. Drew Edmondson, Attorney General of Oklahoma, Steven E. Lohr,

---

*After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Assistant Attorney General, Criminal Division, State of Oklahoma, Oklahoma City, Oklahoma, for Respondents-Appellees.

---

Before **ANDERSON** , **TACHA** , and **BALDOCK** , Circuit Judges.

---

**TACHA** , Circuit Judge.

---

Petitioner David Leon Cummings, an Oklahoma state prisoner, appeals an order of the district court denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Because petitioner is proceeding pro se, we liberally construe his brief and find that he raises all issues brought before the district court. See Hall v. Bellmon , 935 F.2d 1106, 1110 (10th Cir. 1991). On appeal, Mr. Cummings alleges: (1) a violation of his right not to be placed in double jeopardy because both crimes arose from the same course of criminal conduct; (2) denial of a fair trial because the court admitted his co-defendants' prior out-of-court statements in violation of his Sixth Amendment right to confront witnesses; (3) state court error in failing to rule on his motion to suppress his co-defendant's statements; (4) unlawful enhancement of his sentence; (5) error in allowing the prosecution to tell the jury how much time he served for a prior conviction; and (6) that the trial court's treatment of his motion to sever and his peremptory challenges violated the Fifth and Sixth Amendments. We exercise jurisdiction pursuant to 42 U.S.C. § 2253 and affirm.

I.

On the afternoon of April 18, 1988, petitioner entered a bar in Savanna, Oklahoma. He ordered a beer from the lone waitress, left the bar for a few minutes and returned. Soon after, two other men entered the bar. One went immediately behind the bar, stabbed the waitress, and struck her in the mouth when she screamed. The waitress fell down, and the assailant then took money from the cash register and the waitress' purse. Meanwhile, petitioner came around the bar and put a knife to the waitress' throat, instructing the third man to tie and gag her. After binding the waitress, the men fled. Police apprehended them later that day.

A jury convicted Mr. Cummings of Robbery with a Dangerous Weapon After Former Conviction of a Felony ("AFCF") and Assault and Battery with a Deadly Weapon AFCF. The trial court imposed consecutive sentences of twenty-five years for the robbery charge and one hundred years for the assault and battery charge. Defendant filed a direct appeal, raising numerous constitutional and procedural errors. On February 23, 1993, the Oklahoma Court of Criminal Appeals affirmed Mr. Cummings' convictions in a summary opinion. Mr. Cummings then filed a petition for a writ of habeas corpus with the United States District Court for the District of Western Oklahoma. The matter was referred to a magistrate judge, who recommended denial of the petition on all counts except

petitioner's double jeopardy claim. The district court, in a written order on October 24, 1996, refused to follow the magistrate's recommendation as to the double jeopardy claim, adopted the magistrate's other recommendations, and denied the habeas petition. We granted Mr. Cummings' motion for a certificate of probable cause to proceed on appeal and ordered briefing on his double jeopardy claim. Respondent concedes that petitioner has exhausted his state remedies for the purposes of federal habeas corpus review.

II.

On appeal from the district court's determination of a § 2254 petition, we review the district court's conclusions of law de novo, but we presume the state court's factual findings are correct unless they are not fairly supported by the record. See Hatch v. Oklahoma, 58 F.3d 1447, 1453 (10th Cir. 1995). We review mixed questions of law and fact de novo. See id.

A. Double Jeopardy

Mr. Cummings asserts that his conviction for both Robbery with a Dangerous Weapon and Assault and Battery with a Deadly Weapon violates the Double Jeopardy Clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment. The Double Jeopardy Clause consists of three separate constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the

same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989). Here, the third protection is at issue. This protection, however, is limited to "ensur[ing] that the sentencing discretion of courts is confined to the limits established by the legislature," for it is the legislature that is vested with "the substantive power to prescribe crimes and determine punishments." Ohio v. Johnson, 467 U.S. 493, 499 (1984); see also Missouri v. Hunter, 459 U.S. 359, 366 (1983). Thus, when a course of criminal conduct constitutes a violation of two statutory provisions, the test to determine whether the punishments are "multiple," in violation of the Double Jeopardy Clause, is "essentially one of legislative intent." Johnson, 467 U.S. at 499. In the absence of clear legislative intent, courts must apply the Blockburger test, which states "'that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not.'" Hunter, 459 U.S. at 366-67 (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)).

Respondent argues that the applicable standard in this case is Blockburger. Under that standard, Mr. Cummings' double jeopardy argument certainly fails because, under Oklahoma law, the elements for robbery differ from those for

assault and battery. [1]  However, this argument overlooks Okla. Stat. tit. 21, § 11, which provides:

> an act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, . . . but in no case can [it] be punished under more than one; and an acquittal or conviction and sentence under either one, bars the prosecution for the same act or omission under any other.

This statutory double jeopardy provision, which is separate from the double jeopardy provision of the Oklahoma state constitution, see Hale v. State, 888 P.2d 1027, 1029 (Okla. Crim. App. 1995), is indicative of legislative intent.  Thus, we must consider it in determining the federal constitutional double jeopardy question.

"In assessing whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, we are bound by a state court's determination of the legislature's intent." Birr v. Shillinger, 894 F.2d 1160, 1161 (10th Cir. 1990); see also, e.g., Lucero v. Kerby, 133 F.3d 1299, 1316 (10th Cir. 1998) (asserting that federal court in habeas corpus proceeding should defer to

---

[1]  The elements of Assault and Battery with a Deadly Weapon are: 1) an assault and battery; 2) upon another person; 3) with a deadly weapon or by such other means as is likely to produce death.  See Okla. Stat. Ann. tit. 21, § 652.  By way of comparison, the elements of Robbery with a Dangerous Weapon are: 1) wrongful; 2) taking; 3) of the personal property; 4) of another; 5) from another; 6) by force or fear; 7) through the use of a dangerous weapon.  See Okla. Stat. Ann. tit. 21, §§ 791, 801.

state court's determination of separate offenses for double jeopardy purposes), cert. denied , 118 S. Ct. 1684 (1998);   Thomas v. Kerby  , 44 F.3d 884, 887 (10th Cir. 1995) (same).  In other words, if the highest state court determines that the legislature intended to punish separate offenses cumulatively, a federal habeas court must defer to that conclusion.    See Birr, 894 F.2d at 1161.  Here, the Oklahoma Court of Criminal Appeals, the highest court on criminal matters in Oklahoma,  see Brecheen v. Reynolds  , 41 F.3d 1343, 1348 n.2 (10th Cir. 1994), rejected Mr. Cummings' double jeopardy argument.  Because we defer to the highest state court's ruling, this might be the end of the issue.

However, Mr. Cummings asserts that we may not rely on the Court of Criminal Appeals' decision because it was a summary disposition.  Recognizing that this court has, in the past, deferred to summary decisions of the Court of Criminal Appeals,   see Larsen v. Frazier  , 835 F.2d 258, 259 (10th Cir. 1987) (per curiam), Cummings argues that    Ylst v. Nunnemaker  , 501 U.S. 797 (1991) now requires that we accord a state court's summary opinion no weight.  Instead, Cummings claims we must look to other state court opinions in order to determine if there were valid grounds for the Court of Criminal Appeals decision.      Ylst involved the question of whether procedural default applied to a habeas corpus petition.  The Supreme Court held that a federal habeas corpus court would have to "look through" a state appellate court's summary denial of post-conviction

relief to the last reasoned opinion in that case in order to determine whether procedural default applied. Ylst, 501 U.S. at 802-04. Petitioner recognizes that, since he appealed his conviction directly to the Court of Criminal Appeals, there is no written opinion in his case. Therefore, he argues we must expand the Ylst principle and look to other applicable reasoned decisions by the Court of Criminal Appeals.

Ylst dealt specifically with procedural default. This court has not addressed whether a "look through" principle applies to summary dispositions in the double jeopardy context. Regardless of whether we rely on the summary disposition or look through to other decisions of the Oklahoma Court of Criminal Appeals, the summary disposition in this case is consistent with numerous other reasoned decisions of the Court of Criminal Appeals that support the determination that Mr. Cummings' convictions do not violate Okla. Stat. tit. 21, § 11.

Section 11 applies when "a single criminal act gives rise to offenses which are not separate and distinct, are a means to another ultimate objective, are lesser included offenses, or are incidents or facets of some other offense." Hale v. State, 888 P.2d 1027, 1029 (Okla. Crim. App. 1995). The test is "whether, taken as a whole, a defendant has been punished twice for one criminal course of conduct where his offenses were incident to one objective." Id. When the

"criminal course of conduct" consists of a singular act that violates two criminal laws, § 11 clearly applies. See id. at 1030 ("In promulgating § 11 our legislature expressed its clear intention that, where an act or omission is punishable under different statutes, a defendant may only be punished once for the single act."). For example, in Hale, the court held that a defendant who committed forcible rape against his sister could not be convicted of both rape and incest, since both offenses were incident to the single objective of sexual intercourse. See id. at 1030; see also, e.g., Mathues v. State, 925 P.2d 64, 65 (Okla. Crim. App. 1996) (holding defendant who illegally sold cocaine cannot be punished for both delivery of narcotics and receipt of proceeds derived from illegal drug activities); Hammon v. State, 898 P.2d 1287, 1303 (Okla. Crim. App. 1995) (holding defendant who used a firearm during a robbery cannot be punished for both felony murder and use of a firearm in commission of felony because both crimes punish the use of the firearm); Jones v. State, 635, 653-54 (Okla Crim. App. 1995) (holding that defendant's conviction of both stealing a vehicle and possession of a stolen vehicle violated § 11 because defendant "had to necessarily possess the vehicle to be convicted of stealing it"). The question becomes more problematic when, as in this case, the "criminal course of conduct" consists of more than one criminal act. Thus, the key to understanding whether petitioner's convictions violated § 11 is within the phrase "are means to another ultimate objective."

Unfortunately, the Oklahoma Criminal Court of Appeals has not precisely defined the scope of this phrase.

The Oklahoma Court of Criminal Appeals' cases do, however, demonstrate that the completion of one separate and distinct offense does not prevent the defendant from being punished for a later offense committed within the same criminal episode if the two offenses did not assist each other, i.e., neither is a means to the other. In this scenario, § 11 does not apply because the criminal defendant has manifested two separate criminal objectives. For example, the Court of Criminal Appeals found that a defendant who robbed and then shot his victim could be sentenced for both Robbery with a Dangerous Weapon and Assault and Battery with a Deadly Weapon. See Ashinsky v. State, 780 P.2d 201, 208 (Okla. Crim. App. 1989). The court reasoned that because the robbery was complete at the time the victim was shot, defendant's argument that he committed the subsequent shooting to consummate the robbery was without merit. See id. Essentially, neither offense assisted the defendant in committing the other. The court found that having finished his first crime, robbery, the defendant changed his focus and criminal objective and accomplished a second crime, assault and battery. See id.

In this case, petitioner's argument is stronger because the stabbing undoubtedly made it easier to complete the robbery. Nevertheless, the Court of

Criminal Appeals has stated, when elaborating on the phrase "means to some other ultimate objective," that a continuing offense is "'a transaction or series of acts set on foot by a *single impulse*, and operated by an *unintermittent force*, no matter how long it may occupy.'" See Gregg v. State, 844 P.2d 867, 878 (Okla. Crim . App. 1993) (emphasis added). Moreover, it is clear that the Oklahoma legislature, in promulgating § 11, did "not intend[ it] as a method of carte blanche extending to the accused the prerogative of committing as many offenses as he desire[s] within the same transaction with the protective shield of permitting only one prosecution to arise . . . from that transaction." Id. (quoting Hoffman v. State, 611 P.2d 267, 269 (Okla. Crim. Ct. 1980)). Based on these considerations and our understanding of the relevant Oklahoma case law, we conclude that § 11 does not apply when a person commits non-essential and gratuitous criminal acts in the course of accomplishing another crime, even if the intervening crimes assist the person in consummating the final criminal act. By acting outside the scope of what is needed to complete the ultimate crime, the defendant manifests a separate criminal objective -- an impulse distinct from the course of conduct leading up to the original criminal objective. Here, in deciding to stab the waitress, the assailant engaged in an act of gratuitous violence separate from the robbery. [2]

_____

[2]The record indicates that the defendant did not need to stab the waitress to complete the offense. To the contrary, the assailant entered the bar and immediately went behind the counter to stab the victim.

Petitioner argues that the cases of Bray v. Page, 494 P.2d 339 (Okla. Crim. App. 1972) and Smith v. State, 486 P.2d 770 (Okla. Crim. 1971) compel a different result. We disagree. Bray and Smith each involved a defendant who was charged with two criminal acts arising out of a single criminal episode. See Bray, 494 P.2d at 339 (defendant charged with Shooting with the Intent to Kill and Attempted Robbery with Firearms); Smith, 486 P.2d at 770-71 (defendant charged with Assault and Battery with a Deadly Weapon and Robbery with a Dangerous Weapon). In both cases, the defendant was charged and convicted of one offense and subsequently charged and convicted of a second offense. See Bray, 494 P.2d at 339; Smith, 486 P.2d at 771. The Court of Criminal Appeals struck the second convictions as violating § 11 because both convictions arose from the same criminal action. See Bray, 494 P.2d at 340; Smith, 486 P.2d at 771-72.

These cases do not govern the issue presented here. The Oklahoma Court of Criminal Appeals has drawn a distinction between multiple trials arising out of the same transaction and a single trial with multiple charges. See Ashinsky v. State, 780 P.2d 201, 208 (Okla. Crim. App. 1989). In instances involving more than one trial, the Oklahoma courts apply a "same transaction" test that is more protective than the test for multiple charges at a single proceeding. See id. Thus, in Ashinsky, which, like this case, involved convictions for Assault and Battery

- 12 -

with a Deadly Weapon and Robbery with a Dangerous Weapon at a single trial, the court ruled it was not bound by Bray or Smith. See id. This distinction is significant in Oklahoma law, and we defer to that determination. See Johnson v. Fankell, __ U.S. __, 117 S. Ct. 1800, 1804 (1997) (federal courts do not have "authority to place a construction on a state statute different from the one rendered by the highest court of the state"). Moreover, it is a distinction that has a rational basis, not an arbitrary one, and consequently it does not violate petitioner's rights to equal protection or due process of law. Cf. Weatherly v. State, 733 P.2d 1331, 1336 (Okla. Crim. App. 1987) (noting that double jeopardy prohibitions against multiple prosecutions and multiple punishments are "based on separate policies and are designed to accomplish different objectives"). Compare Ohio v. Johnson, 467 U.S. 493, 499 (1984) (noting that the Double Jeopardy Clause's protection against multiple punishment is to constrain the discretion of the courts to impose punishments greater than those prescribed by the legislature) with Ashe v. Swenson, 397 U.S. 436, 453-54 (1970) (Brennan, J., concurring) (asserting that the Double Jeopardy Clause's prohibition against subsequent prosecutions for charges arising from the same transaction is to prevent the State from making "repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity" (quoting

Green v. United States, 355 U.S. 184, 187 (1957))). Therefore, we find petitioner's reliance on Bray and Smith misplaced. His double jeopardy claim fails.

### B. Admission of Out-of-Court Statements

Mr. Cummings' five additional challenges are also without merit. First, petitioner asserts that the admission of statements by non-testifying witnesses violated the Sixth Amendment Confrontation Clause, as construed in Bruton v. United States, 391 U.S. 123 (1968). We find no constitutional error in the trial court's treatment of the co-defendants' out-of-court statements. Although Bruton prohibits jury consideration of non-testifying co-defendant statements that incriminate the defendant, see id. at 136-37; Nelson v. O'Neil, 402 U.S. 622, 626-28 (1971), here, both co-defendants took the stand and were subject to cross-examination. Moreover, the statements referenced by Mr. Cummings were never introduced into evidence. One co-defendant denied making the statement the prosecution sought to admit, and the other testified he could not remember making the statement. This ended any questioning into these statements. Additionally, Mr. Cummings' name was not mentioned at any time during this testimony. Thus, there was no Bruton error at trial. See Nelson, 402 U.S. at 629-30 (finding no constitutional error when co-defendant testified and denied an out-of-court statement implicating defendant); Richardson v. Marsh, 481 U.S. 200,

211 (1987) (holding that Bruton does not apply where defendant is not incriminated).

Mr. Cummings also appears to raise a due process claim based on the alleged admission of these same statements. This claim fails for the same reasons cited above. Furthermore, we have no authority to consider any error of state law on habeas review unless it violates federal law. See Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). We find no such violation on this issue.

## C. Illegal Sentence

Mr. Cummings claims that his convictions were unlawfully enhanced because the State did not indicate at the preliminary hearing that it would be charging him AFCF and because the State failed to prove his prior conviction. To the contrary, the record reveals that the trial court admitted evidence of Mr. Cummings' prior conviction at the preliminary hearing and sentencing phase. We will not grant habeas relief on state court evidentiary rulings unless they rendered the "'trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'" Duvall v. Reynolds, 139 F.3d 768, 789 (10th Cir. 1998) (quoting Hopkinson v. Shillinger, 866 F.2d 1185, 1197 (10th Cir. 1989)), cert. denied, -- U.S. --, 1998 WL 46480 (Oct. 13, 1998). We find that petitioner was

not deprived of any federal constitutional rights in the proof and admission of evidence regarding his prior conviction. Thus, petitioner's illegal sentence claim has no merit.

## D. Prosecutorial Misconduct

At one point during the trial, the prosecutor told the jury that petitioner had served only three months of his prior three-year sentence. Mr. Cummings claims this statement constituted prosecutorial misconduct that was so prejudicial that it deprived him of a fair trial. We disagree. Habeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair. See Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998). In making this determination, we consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." Jackson, 143 F.3d at 1322. This court has previously elaborated on what this inquiry entails:

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution. We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. When a prosecutor responds to an attack made by defense counsel, we evaluate that response in light of the defense argument. Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly.

- 16 -

Hopkinson v. Shillinger, 866 F.2d 1185, 1210 (10th Cir. 1989) (internal quotation marks and citations omitted); accord Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994). After reviewing the record, we find that the strong evidence of guilt, the fact that the remarks occurred at the sentencing phase of the trial, the fact that the comments were made in response to statements by defense counsel, and the fact that the trial judge gave careful curative instructions to the jury combine to show that no fundamental unfairness resulted from the prosecutor's comments. Cf. Darden v. Wainwright, 477 U.S. 168, 181 (1986) (finding no unfair trial when record showed strong evidence of guilt, curative instructions, and fact that statements were made in response to defense counsel); Jackson, 143 F.3d at 1322 (finding that prosecutorial misconduct did not "fundamentally impair" the jury's ability to judge the evidence fairly when the record contained "considerable evidence" of guilt).

E. Denial of Motion to Sever and Treatment of Peremptory Challenges

Finally, Mr. Cummings asserts that the trial court's treatment of his motion to sever and his peremptory challenges violated his Fifth and Sixth Amendment rights. Whether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas appeal, see Bond v. Oklahoma, 546 F.2d 1369, 1377 (10th Cir. 1976), for a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice

caused by the joint trial, <u>see</u> <u>United States v. Youngpeter</u>, 986 F.2d 349, 353 (10th Cir. 1993). To make such a showing, the defendant must necessarily disclose sufficient information to enable the court to make a finding of prejudice. It is this disclosure that forms the basis of petitioner's assignment of error. In particular, petitioner objects to the fact that the trial court, in ruling on his severance motion and request for peremptory challenges, required him to reveal his theory of defense in violation of his right to remain silent and his right to a fair trial.

The disclosure of his defense theory prior to trial did not violate petitioner's Fifth Amendment privilege against self-incrimination. It is well-settled that defendants may be required to disclose to the court and to the state their defenses prior to trial. As the Supreme Court stated in <u>Williams v. Florida</u>:

> [T]he privilege against self-incrimination is not violated by a requirement that the defendant give notice of an alibi defense . . . .
>
> . . . That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.

399 U.S. 78, 83-84 (1970). The court did not unconstitutionally compel petitioner to disclose his defense, and "[n]othing in the Fifth Amendment privilege entitles the defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense." <u>Id.</u> at 85.

Petitioner also seems to argue that the disclosure of his defense theory to

the prosecution violated either his Fifth Amendment right to due process of law or his Sixth Amendment right to a fair trial. Simply put, petitioner has not provided, and we have not found, any authority supporting his argument that the disclosure outside the presence of the jury of information necessary to make a showing of prejudice to support a severance motion violates the Fifth or Sixth Amendments. In any event, after reviewing the record in this case, we find that plaintiff suffered no prejudice from the trial court's handling of his motion for severance.

Petitioner's final claim is that he was unfairly limited in his number of peremptory challenges. The number of peremptory challenges is a matter of state law that raises no constitutional questions. See Ross v. Oklahoma, 487 U.S. 81, 88 (1988). We may not review this claim.

## III.

Therefore, for the reasons discussed above, we deny Mr. Cummings' habeas corpus petition. The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.