**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 4 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

MARK FRANCIS CARRIER,

Petitioner-Appellant,

v.

RICHARD MARR; KEN SALAZAR,
ATTORNEY GENERAL OF THE
STATE OF COLORADO,

Respondents-Appellees.

No. 01-1011
(D.C. No. 96-D-1419)
(D. Colo.)

---

ORDER AND JUDGMENT  *

---

Before **TACHA** , Chief Judge,   **SEYMOUR** , Circuit Judge, and   **BRORBY** , Senior
Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Mark Francis Carrier appeals from the district court's order denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We previously granted Mr. Carrier's request for a certificate of appealability, *see id.* § 2253(c). We now affirm the district court's judgment denying habeas relief.

Mr. Carrier was convicted after a jury trial in Colorado state court of two counts of attempted second degree murder and two counts of "crime of violence." The Colorado Court of Appeals summarized the facts relating to his convictions as follows:

> Defendant's wife moved with the party's children to her parents' home as a result of marital discord. Thereafter, defendant and his wife met for dinner during which she stated that she would resume living with defendant. However, when defendant arrived the next morning at her parent's home, his wife stated that she would not reconcile. At that point, defendant pulled out a knife.
>
> Conflicting testimony described the events that followed. However, it is undisputed that the wife was stabbed four times, receiving serious wounds in the chest, the back, and the arm. Her father was stabbed twice, once in the abdomen and once in the back. Both victims required extensive surgical intervention.

*People v. Carrier*, 791 P.2d 1204, 1205 (Colo. Ct. App. 1990). Mr. Carrier does not dispute these basic factual findings, which are amply supported by the record.

On appeal, Mr. Carrier contends that the prosecutor denied him due process by repeatedly asserting in closing argument that the defense had tried to confuse the jury (1) by putting lesser included offenses before it and (2) by relying on the law of lesser included offenses rather than the facts of the case. The federal

-2-

district court held that the challenged prosecutorial comments did not rise to the level of a denial of due process.

Although Mr. Carrier exhausted this claim in state court, *see Carrier v. Marr*, No. 99-1137, 1999 WL 1244474, at **2 (10th Cir. Dec. 20, 1999), the Colorado Court of Appeals did not discuss clearly established constitutional law in resolving the claim. We therefore review the district court's order denying Mr. Carrier's habeas claim *de novo*, and its factual findings, if any, for clear error. *Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001).

The information filed against Mr. Carrier charged him with two counts of attempted first degree murder. At trial, Mr. Carrier did not deny stabbing the victims. His theory of defense was that he was guilty at most of a lesser included offense. The jury received instructions on a number of lesser included offenses, including attempted second degree murder, attempted manslaughter, first degree assault and second degree assault. Mr. Carrier's counsel spent considerable time during closing argument explaining these instructions to the jury.

In its rebuttal closing, the prosecution argued as follows:

[I]f you don't have the facts, you argue the law. And that's what's been done here. And if you have the facts, you don't have to argue the law.

We've charged this man with two counts of . . . attempted first degree murder and two counts of crime of violence. That's what we charged him with. All the other book of stuff you get is lesser included offenses that the defense has the right to ask you to

consider. That's not what we considered. But that book, that's the law. That book is their defense. Confusion is their defense in this case. We didn't put that book of assault first, second, reckless, some kind of reckless –

Trial Tr., Vol. II at 340. At this point, the defense objected, arguing that it is the court's duty to give the instructions. *Id.* In response, both the prosecutor and the court stated their agreement to this principle.

The prosecutor then continued his argument that the prosecution was not responsible for the lesser included offense instructions, culminating in this comment:

> So if you don't have the facts, you argue the law.
>
> You heard [defense counsel] get up there and tell you I don't know what it's going to mean. It's going to take you years to get through this book of instructions. He doesn't want you to look at the facts. He wants to keep you in that book of instructions.

*Id.* at 341. Defense counsel again objected. The trial court held a bench conference but did not make any ruling before the jury and took no immediate corrective action. The prosecutor continued, referring to the "you never know defense":

> That's an expression where, uh, you got nothing to lose so let's throw up all this stuff to them. You heard that argument. Let's throw all this stuff out to them and heck, you never know. It only takes one juror. You never know defense.

*Id.* at 342. Defense counsel again objected, but the trial court responded that the prosecutor had the right to comment on the defense arguments. The prosecution

-4-

later returned to the theme of lesser included offenses, arguing that any time one commits a murder, he also commits lesser included offenses. He admonished the jury not to let the lesser included offenses confuse them. *Id.* at 345.

After closing arguments were complete, defense counsel moved for a mistrial based on the prosecution's comments. He also requested that the jury be instructed to disregard the comments. The trial court denied both the mistrial and the curative instruction, stating that it had already instructed the jury that it was the court's duty to give the instructions, not the prosecution's.

Habeas relief will be granted for improper prosecutorial remarks only where the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). We must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) (quotation omitted).

> [W]e look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution. We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. When a prosecutor responds to an attack made by defense counsel, we evaluate that response in light of the defense argument. Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly.

*Id.* (quotation omitted).

Some of these factors weigh in favor of Mr. Carrier. The state court arguably could have given a more explicit curative instruction, and defense counsel's argument did not invite the attack on the court's instructions. The remaining and more essential factors, however, weigh against Mr. Carrier.

The jury did not convict Mr. Carrier of the offense charged, but of the lesser included offense of attempted second degree murder. This fact suggests the jury followed the trial court's admonitions to apply the law rather than the prosecution's suggestion to avoid reliance on the instructions.

Moreover, a careful review of the record shows that the jury more likely rejected the lesser included offenses of attempted manslaughter, first degree assault or second degree assault for lack of evidence rather than as a result of the prosecution's admonitions. There was ample evidence from which the jury could have found that Mr. Carrier acted knowingly and without "heat of passion" in stabbing the victims. Much less evidence supported Mr. Carrier's theory that his wife's actions in refusing to reconcile with him, during the course of what was described as a quiet or normal conversation, would have excited an "irresistible passion" in a reasonable person, leading him to stab her with a near-fatal wound. *See* State R., Vol. I, Instruction 12 (defining elements of attempted manslaughter). The jury likely also rejected as implausible the defense theory that his father-in-law contributed to his own injuries by impaling himself on the knife, and by

putting Mr. Carrier in such fear of his life that he had no choice but to strike out blindly and stab his victims multiple times. The lesser included offenses for first or second degree assault were further contraindicated by the evidence that both victims nearly died from their wounds.

In sum, the evidence in this case tips strongly against Mr. Carrier. He fails to show that the probable effect of the prosecutor's statements was to prevent the jury from judging the evidence fairly and reaching a verdict consonant with the instructions provided.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court


Stephanie K. Seymour
Circuit Judge