**F I L E D**

**UNITED STATES COURT OF APPEALS**

**September 26, 2005**

**TENTH CIRCUIT**

BARNARD ANDERSON,

      Plaintiff - Appellant,

v.

SEDGWICK COUNTY,

      Defendant - Appellee.

No. 05-3118

(D. Kansas)

(D.C. No. 03-CV-1230-MLB)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **HARTZ**, and **McCONNELL**, Circuit Judges.

Plaintiff Barnard Anderson appeals the grant of summary judgment in favor of

Defendant Sedgwick County on his claims of racial discrimination in violation of

42 U.S.C. §§ 1981 and 1983. We have jurisdiction under 28 U.S.C. § 1291 and affirm.[**]

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.(G). The case is therefore ordered submitted without oral argument.

## I.    BACKGROUND

The Sedgwick County Department of Corrections (DOC) hired Mr. Anderson, who is black, in June 2001.  During Mr. Anderson's interview for the position, he disclosed that his daughter was also employed by the DOC in a different facility.  Gary Sutton, head of the program for which Mr. Anderson interviewed, checked with both his supervisor, Robert Brassfield, and Mr. Brassfield's supervisor, Larry Ternes, about hiring Mr. Anderson despite his daughter's employment and received approval from both.  The DOC director, Mark Masterson, was not involved in the hiring process.  But when Mr. Masterson learned, less than a day after Mr. Anderson's start date, that Mr. Anderson had been hired in violation of the DOC antinepotism policy, Masterson made the decision to terminate him while he was still on probationary status.  The DOC hired as Mr. Anderson's replacement a resident alien from West Africa, who is also black.

Mr. Anderson filed a complaint with the Kansas Human Rights Commission and the Equal Employment Opportunity Commission, alleging that Defendant discriminated against him on the basis of race, sex, disability, and age.  After exhausting his administrative remedies, Mr. Anderson, represented by counsel, filed a complaint in the United States District Court for the District of Kansas, alleging racial discrimination in violation of 42 U.S.C. §§ 1981, 1983.

In response Defendant filed a motion for summary judgment arguing that (1) section 1981 was inapplicable to Mr. Anderson's case, (2) Mr. Anderson had failed to

establish a prima facie case of racial discrimination, (3) Mr. Anderson could not establish that Defendant's reason for terminating his employment—violation of its antinepotism policy—was pretextual, and (4) Mr. Anderson failed to file his claim within the two-year limitations period.

The district court granted summary judgment, holding that Mr. Anderson had established a prima facie case of discrimination but that he could not establish that Defendant's reason for firing him was pretextual because he could not show that the antinepotism policy was applied inconsistently. It further held that it need not decide whether Mr. Anderson could bring a claim under § 1981, because even if he could, it would fail. Mr. Anderson filed a pro se motion to reconsider, which was also denied.

Mr. Anderson appeals, contending that (1) he is entitled to a decision on his motion for reconsideration; (2) "a District Court Judge *conducted proceedings* in place of a Chief Magistrate Judge and . . . it was [not] approved by the '*magistrate*,'" Aplt. Br. at 7; and (3) the district court's grant of summary judgment to Defendant was improper because he did not actually violate the Defendant's antinepotism policy. We review each contention in turn.

## II. DISCUSSION

Before addressing the grant of summary judgment, we easily dispose of Mr. Anderson's other arguments. Mr. Anderson's contention that his motion for

reconsideration was never ruled upon is without merit. The district court issued a Minute Order denying the motion on February 18, 2005.

Mr. Anderson's complaint that a district judge, as opposed to a magistrate judge, conducted his proceedings likewise fails. Mr. Anderson relies on Kansas District Court Rule 72.1.2, which provides:

> b) Civil cases shall be assigned by the clerk of the court to a magistrate judge or judge for the conduct of a Fed. R. Civ. P. 16(b) scheduling conference, the issuance of a scheduling order, and such other pretrial conferences as are necessary and appropriate, and for the hearing and determination of all pretrial, procedural and discovery motions. Where the parties consent to the trial and disposition of a case by a magistrate judge under D. Kan. Rule 72.1.3, such case shall, with the approval of the judge to whom it was assigned at the time of filing, be re-assigned to a magistrate judge for the conduct of all further proceedings and the entry of judgment.

Mr. Anderson construes this rule to mean that once his case was assigned to a magistrate judge, all dispositions required the approval of a magistrate judge. But the same rule provides:

> c) Reservation of Proceedings by Judges. Nothing in these rules shall preclude a judge from reserving any proceedings for conduct by a judge, rather than by a magistrate judge.

D. Kan. R. 72.1.2. No violation of the local rules occurred in this case.

## A.      Summary Judgment

Mr. Anderson argues that the grant of summary judgment was improper because Defendant's antinepotism policy does not apply to him, and thus could not serve as a legitimate nondiscriminatory reason for his termination. Defendant's antinepotism policy states:

D. Employment of Immediate Family
  1. Sedgwick County will prohibit the hiring of spouses and/or immediate family members within the same department, but not within the County structure.
     a. Immediate family and family of the employee's spouse shall be considered husband, wife, son, son-in-law, daughter . . .

Policy/Procedure Manual of Sedgwick County ¶ II.D (hereinafter "Manual"), R. at Doc. # 44, p. 10002. It is undisputed that Mr. Anderson's daughter was employed by the Department of Corrections, albeit in a different program. Thus, the plain language of the antinepotism policy prohibits Mr. Anderson's employment within the same department as his daughter.

Mr. Masterson indicated in his deposition that some time prior to Mr. Anderson's hire and discharge, a human resources representative had informed him that the underlying purpose of the antinepotism policy was to prohibit family members from working in the same program or supervising one another. But he had decided to apply the antinepotism policy as it was stated in the manual, to prohibit family members from working together within his department. Mr. Anderson's contention that Defendant's antinepotism policy did not apply to him is without merit.

Although Mr. Anderson does not specifically attack the district court's holding that he failed to carry his burden of showing that the antinepotism policy was a pretext, we construe his pro se brief to this court as a general attack on the grant of summary judgment in favor of Defendant. *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir.

-5-

1998).  "We review grants of summary judgment *de novo* to determine whether any genuine issue of material fact exists, viewing all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party." *Raiser v. Utah County*, 409 F.3d 1243, 1246 (10th Cir. 2005) (internal quotation marks omitted).

The district court applied the *McDonnell Douglas* burden-shifting framework to Mr. Anderson's claims of racial discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  The *McDonnell Douglas* test requires that Mr. Anderson first establish a prima facie case of discrimination.  The burden then shifts to Defendant to proffer a legitimate nondiscriminatory reason for its actions; and if Defendant does so, the burden shifts back to Mr. Anderson to show that Defendant's proffered reasons were pretextual.  The district court ruled that Mr. Anderson had established a prima facie case of racial discrimination, and that Defendant had offered a legitimate nondiscriminatory reason for his discharge—that he was hired in violation of the DOC's antinepotism policy.  The burden of persuasion then lay with Mr. Anderson to provide proof that Defendant's proffered reason was a pretext for its alleged racial discrimination.

> A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false, (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances, or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.  A plaintiff who wishes to show that the company acted contrary to an unwritten policy

or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

*Kendrick v. Penske Transp. Serv., Inc*. 220 F.3d 1220, 1230 (10th Cir. 2000) (internal citations omitted).

Mr. Anderson attempted to establish that Defendant's proffered reason for terminating him was pretextual by evidence that he was treated differently from other similarly situated employees who violated the antinepotism policy. Specifically, in his memorandum in opposition to the motion for summary judgment, Mr. Anderson alleges that "Caucasians such as the Suttons, Novaks, Strouds, Hieberts, and others were treated differently and were hired and retained despite the Anti-Nepotism policy." R. at Doc. # 49, p. 24.

The Suttons, Strouds, and Hieberts were all married couples. The Suttons were married and hired by the DOC before the enactment of the antinepotism policy in 1981 and were grandfathered in. The Strouds were simultaneously employed as sheriff's deputies, but the sheriff's department was governed by a less restrictive policy than the county's antinepotism policy. Patrick Heibert and his former wife were married after their employment. The antinepotism policy permits employees to remain in the same department after being married "so long as an employee does not supervise or receive supervision from, have assignment with or work in close proximity to, a member of

his/her immediate family." Manual ¶ II.D.2. During their marriage the Hieberts did not supervise one another and worked in different programs.

As for Chris Novak and Stacy Anderson, sibling employees of the DOC, Defendant concedes that they violated the antinepotism policy. But Mr. Masterson did not learn of the hiring mistake until after the employees had completed probationary status and were permanent employees—not probationary like Mr. Anderson.

Defendant points out that on two other occasions it has learned of violations of its antinepotism policy after the employees had gained permanent employee status. On both occasions the employees were African-American, and it did not terminate these employees either. Although Mr. Anderson has shown that other employees did not suffer adverse consequences for violating the antinepotism policy, two of the three sets of unpunished violators were African-Americans, hardly suggesting racial prejudice.

Moreover, in each case the employees had achieved permanent-employee status before the violation was discovered. Thus, Mr. Anderson was not similarly situated to the other DOC employees who had violated the policy.

Because Mr. Anderson did not sustain his burden to demonstrate pretext in Defendant's terminating him, the grant of summary judgment in favor of Defendant is AFFIRMED.

Mr. Anderson's motion to proceed *in forma pauperis* is granted.  Mr. Anderson's other outstanding motions are denied.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge