FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

March 22, 2011

TENTH CIRCUIT

Elisabeth A. Shumaker
Clerk of Court

---

JOSUE JEROME WALTON,

      Petitioner-Appellant,

v.

JIM KEITH, Warden,

      Respondent-Appellee.

No. 10-6180
(D.C. No. CIV-09-281-F)
(W.D. Okla.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

---

Before **LUCERO**, **EBEL** and **GORSUCH**, Circuit Judges.

---

Josue Jerome Walton, a pro se Oklahoma state prisoner convicted of five counts of robbery with a firearm, seeks a certificate of appealability (COA) so that he may challenge the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. He also requests leave to proceed on appeal in forma pauperis (IFP). We grant IFP status. But exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we conclude that Walton has failed to make a substantial showing of the denial of a constitutional right. Accordingly, we deny his request for a COA, and we dismiss this appeal.

## BACKGROUND

On September 25, 2004, at about 10:30 p.m., a number of masked gunmen entered an Applebee's restaurant in Oklahoma City and ordered employees and patrons to get on the floor. The gunmen forced an assistant manager at gunpoint to hand over money and other items in the office safe. The gunmen also took cash from the restaurant bar's cash drawer and forced customers to turn over their wallets. At one point, the gunman demanding money from the assistant manager fired his gun into the ceiling above her head. Witnesses at the restaurant reported seeing anywhere from three to six gunmen.

One of the gunmen remained at the front door during the robbery, and when he yelled "time, time, we gotta go," the gunmen exited the restaurant and ran north. A witness who lived in a home near the restaurant saw three men run from the scene, across the parking lot, and into a white Nissan, which was parked on the street adjacent to his window. Police officers responded to the restaurant and began looking for the white car.

Shortly thereafter, a police officer in a nearby suburb observed a white car with a non-working tail light. He initiated a traffic stop of the vehicle, but when he exited his cruiser the vehicle sped off. The white vehicle led several officers on a high speed chase that ended when the vehicle lost control and crashed. The occupants of the vehicle took off on foot, but officers quickly apprehended three men. Walton, however, was not one of the men apprehended at the scene. Upon searching the vehicle, officers recovered weapons, clothing, money, and other items connected to the robbery. Officers recovered

2

a total of four guns: three guns were in or beside the vehicle and the suspects abandoned a fourth gun as they ran from the vehicle. Officers also recovered four sets of latex gloves and four ski-type masks.

The white vehicle belonged to Walton's fiancé. When questioned by investigators, Walton explained that two of the three men apprehended were his cousins and the third was a childhood friend. He also told investigators that all three of the men attended a barbeque at his home on the day of the robbery.

DNA consistent with Walton's DNA was found on one of the ski-type masks discovered in the car. And Walton could not be excluded as the source of DNA on one of the latex gloves also discovered in the car. So, officers arrested Walton seven months after the robbery.

At Walton's trial, his fiancé testified that they hosted a barbeque party at their home on the day of the robbery. Walton fell asleep drunk on the couch. So she asked their guests to leave around 8:00 or 9:00 p.m. and woke Walton up to tell him to go to bed. After tidying up and relaxing, she joined Walton in bed around 10:00 or 10:15 p.m. When she woke up early the next day, she discovered her car missing and called in a police report. Finally, she testified that Walton was there when she woke up.

A jury found Walton guilty of five counts of robbery with a firearm. The court sentenced him to thirty years' imprisonment on each count, to be served concurrently. Walton appealed to the Oklahoma Court of Criminal Appeals (OCCA), but that court affirmed his conviction and sentence.

3

Proceeding pro se, Walton petitioned the federal district court for habeas relief. Walton raised seven grounds for relief: (1) The evidence was insufficient to support a conviction on any of the five counts. (2) The evidence was insufficient to support a conviction specifically on count two. (3) The trial court incorrectly used an enhancement statute to arrive at the sentence imposed. (4) The trial court failed to consider the statutory 85% limit on parole eligibility in determining his sentence. (5) His sentence was excessive when compared to the sentences received by others charged with the same crime. (6) The prosecutor committed prosecutorial misconduct in voir dire and in closing argument. (7) The cumulative effect of these errors denied him the right to a fair trial. A magistrate judge recommended denying the petition on the basis of grounds one, three, four, five, six, and seven. The district court adopted that recommendation and denied Walton's petition based on those grounds. But after further briefing, the magistrate recommended granting the petition on the basis of ground two. The district court also adopted that recommendation. Finally, the district court denied Walton's request for a COA.

In this Court, Walton seeks a COA to raise only one of the aforementioned issues, sufficiency of the evidence.

## DISCUSSION

### I. Standards of Review

Unless an applicant obtains a COA, we lack jurisdiction to consider the merits of a habeas appeal. 28 U.S.C. § 2253(c)(1)(A). We may issue a COA "only if the applicant

4

has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). "This standard requires an applicant to show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further . . . ." Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008).

Further, where the state courts have addressed the merits of the applicant's claims, we must incorporate the Anti-Terrorism and Effective Death Penalty Act's (AEDPA's) deferential treatment of state court decisions into our consideration of the COA request. Dockins v. Hines, 374 F.3d 935, 937–38 (10th Cir. 2004). Under AEDPA, habeas relief is available if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

## II. Sufficiency of the Evidence

Under the due process clause, evidence is sufficient to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[O]ur review under this

---

[1] In Oklahoma, the elements of robbery with a firearm are a person (1) wrongfully (2) takes (3) the personal property (4) of another, (5) from another, (6) by force or fear

Continued . . .

5

standard is sharply limited, and a court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Brown v. Sirmons, 515 F.3d 1072, 1089 (10th Cir. 2008) (internal quotation marks and alterations omitted). The OCCA rejected Walton's sufficiency-of-the-evidence claim on the merits, and we, therefore, incorporate the deference for state court decisions called for by AEDPA in evaluating Walton's request for a COA.

Walton argues that the evidence presented against him was insufficient for three reasons. First, the alibi testimony of his then-fiancé, now-wife, showed that he was not present at the time and place where the robbery was committed. Second, witnesses saw only three robbers at the scene of the crime. And third, he presented evidence explaining the presence of his DNA on one of the ski-type masks.

In rejecting Walton's sufficiency-of-the-evidence claim on direct appeal, the OCCA stated,

> [Walton] claims the State's proof was insufficient because: (1) he presented alibi evidence in the form of testimony from his wife purportedly showing that he was not present at the time or place where the robberies were committed; (2) some witnesses saw only three robbers at the scene; and (3) he presented evidence that could have explained the presence of his DNA found on a robber's mask in the getaway car. These were all jury questions. It is the jury's job to weigh the evidence, resolve conflicting

(7) through the use of a firearm. Cummings v. Evans, 161 F.3d 610, 614 n.1 (10th Cir. 1998) (citing Okla. Stat. tit. 21, §§ 791, 801).

6

evidence, and reconcile conflicting testimony. We accept all reasonable inferences and credibility choices which support the jury's verdict. Taking all the evidence presented in the case in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that [Walton] robbed the restaurant and several of its customers as charged.

(R., vol. I at 12.)

At trial, two witnesses testified that four or more people participated in the robbery. Richard Hackler, who was seated facing the door of the restaurant, testified that four to six men entered and instructed everyone to get on the floor. Further, he testified that two of the men immediately went to the back of the restaurant while two others remained in the front. Matthew Neal, who was a waiter at the restaurant, testified that four men came in the front door of the restaurant with guns and told everyone to get on the floor. Further, the evidence established at trial against Walton, as recounted by the magistrate judge, was as follows:

> Detective Ryan Porter testified that in the course of his investigation he learned that the car belonged to [Walton's] fiancé, that [Walton] knew all three of the men who were apprehended the night of the robbery, and that all three had been at [Walton's] home for a party earlier that same day. The technical investigator who examined the car after it had been secured as evidence found four sets of latex gloves, two guns, and four masks. An officer at the scene of the crash following the chase found a sawed off multi-action shotgun laying on the ground outside the car to the rear and on the passenger side. One of the officers who pursued the robbers as they fled on foot after the crash heard shots being fired as the suspects ran, and called out that one of the suspects had dropped a gun; the gun was later recovered at that location. He also called out "shots fired, four of 'em eastbound." . . . A review of one dash cam . . . apparently revealed a fourth man, shirtless, running from the area of the crash. [Walton's] wife, then-fiancé, was the only alibi witness who testified at the trial, and she testified that [Walton] was asleep on the couch, she woke him and told him to go to bed, which he did and she then came to bed around 10:00 to 10:15 p.m.,

7

awoke around 8:30 or 9:00 a.m. the following morning, and to her knowledge, he did not leave the whole night. She stated that she used to make homemade masks for her husband to wear when treating their lawn for fleas and ticks, and that she kept a box of latex gloves in her car for him to use when cleaning the car, changing the oil, or treating the lawn with pesticides. She also stated that she was pregnant with [Walton's] child at the time of the robbery, that they lived together, that he had access to her home and vehicle, and that their finances were commingled. Finally, [Walton's] DNA was found on one of the masks and he could not be excluded as a donor of the DNA from one of the latex gloves found in the car after it had been secured as evidence.

(Id. at 16.)

Reasonable jurists would not debate the sufficiency of this evidence. Further, we agree with the OCCA that it is within the jury's province to resolve conflicting evidence, and we must presume, after a conviction, that the jury resolved whatever evidentiary conflicts may exist in favor of the government. Therefore, we conclude that a COA is not warranted on Walton's sufficiency-of-the-evidence claim because no reasonable jurist could conclude that the OCCA's decision on direct appeal was contrary to or unreasonable applied clearly established federal law. Further, no reasonable jurist could conclude that the OCCA's decision was based on an unreasonable determination of the facts in light of the evidence presented at trial. Thus, we deny Walton's application for a COA.

**CONCLUSION**

We GRANT Walton leave to proceed IFP, but we DENY the application for a COA and DISMISS this appeal.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

9